BRADLEY W. HERTZ, State Bar No. 138564
bhertz@campaignlawyers.com
JAMES R. SUTTON, State Bar No. 135930
jsutton@campaignlawyers.com
ERIKA M. BOYD, State Bar No. 259633
eboyd@campaignlawyers.com
THE SUTTON LAW FIRM, LLC.
150 Post Street, Suite 405
San Francisco, CA 94108
Tel: 415/732-7700
Fax: 415/732-7701

Attorneys for Plaintiffs
LANDSLIDE COMMUNICATIONS, INC.
and JAMES V. LACY, IN HIS CAPACITY
AS PRESIDENT OF LANDSLIDE
COMMUNICATIONS, INC.

# THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANDSLIDE COMMUNICATIONS, INC. and JAMES V. LACY, IN HIS CAPACITY AS PRESIDENT OF LANDSLIDE COMMUNICATIONS, INC. <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF CALIFORNIA; KAMALA HARRIS, in her capacity as Attorney General of California; CALIFORNIA FAIR POLITICAL PRACTICES COMMISSION; ANN RAVEL, in her capacity as Chair of the Fair Political Practices Commission, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** <br><br> (FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION; 42 U.S.C. SECTION 1983) |

COMPLAINT

1      This action arises out of a recently-enacted, unconstitutional state statute which

2 violates the United States Constitution and thus raises a federal question.  Plaintiffs

3 LANDSLIDE COMMUNICATIONS, Inc. and JAMES V. LACY, IN HIS CAPACITY

4 AS PRESIDENT OF LANDSLIDE COMMUNICATIONS, INC. ("Plaintiffs"), by this

5 Complaint, allege as follows:

6 **INTRODUCTION**

7     1.    Plaintiffs seek this Court's protection from a recently-enacted statute –

8 California Government Code section 84305.7 -- which unconstitutionally requires public

9 safety slate mailer organizations to disclose on their mailers the organization's total

10 number of members.

11     2.    This unconstitutional statute, enacted as part of California Senate Bill

12 488 in 2012 and effective January 1, 2013, applies only to "slate mailer organizations"

13 and not to the numerous other types of organizations and entities that send out political

14 mail.  Pursuant to the California Government Code, "'slate mailer' means a mass mailing

15 which supports or opposes a total of four or more candidates or ballot measures." (Cal.

16 Gov't. Code § 82048.3)  While "slate mailer organizations" comprise groups involved in

17 the production and distribution of slate mailers. (Cal. Gov't. Code § 82048.4.)  Slate mail

18 is political speech in support of or in opposition to candidates and ballot measures, and as

19 such is at the core of the First Amendment's protection of speech.

20     3.    This unconstitutional statute – specifically subsection (c) – further applies

21 only to those slate mailer organizations that identify themselves as representing a

22 nongovernmental organization with a name that includes certain public safety-related

23 terms or "any other term that would reasonably be understood to imply that the

24 organization is composed of, or affiliated with, law enforcement, firefighting, emergency

25 medical, or other public safety personnel."

26     4.    This unconstitutional statute unlawfully discriminates against certain types of

27 speakers in the political process, unlawfully compels speech, and unlawfully imposes

28

2

COMPLAINT

1  content-based restrictions that do not serve a compelling governmental interest and are
2  not narrowly tailored to serve those purported interests.

3      5.    Infringement on political speech in this manner violates the First Amendment
4  to the United States Constitution and 42 U.S.C. Section 1983 and has repeatedly been
5  struck down by the United States Supreme Court, the United States Court of Appeals, and
6  the United States District Courts.

7      6.    The Political Reform Act of 1974, as amended (California Government Code
8  sections 81000, et seq.) provides for substantial criminal, civil and/or administrative
9  penalties against those entities and individuals who violate its provisions, and Plaintiffs'
10 constitutional rights are being unconstitutionally infringed upon and chilled by virtue of
11 this newly-enacted, misguided legislation.

12     7.    As a result of these constitutional and other legal defects, Government Code
13 section 84305.7(c) is invalid, both facially and as applied to Plaintiffs, and Plaintiffs
14 therefore seek injunctive and declaratory relief preventing the enforcement of, and
15 declaring invalid, this statute.

16                          **JURISDICTION AND VENUE**

17     8.    This lawsuit alleges violations of Plaintiffs' rights under the First
18 Amendment to the United States Constitution and 42 U.S.C. section 1983.  Accordingly,
19 this Court has "federal question" jurisdiction over Plaintiffs' claims by virtue of 28
20 U.S.C. sections 1331 and 1343, as well as under this Court's Original Jurisdiction, under
21 which the Court can entertain an action to redress a deprivation of rights guaranteed by
22 the United States Constitution.  This Court further has supplemental jurisdiction over
23 state law claims under 28 U.S.C. section 1367(a).  Declaratory and injunctive relief are
24 authorized by 28 U.S.C. sections 2201 and 2202.  See also Federal Rule of Civil
25 Procedure 65.

26     9.    The Defendants are all public entities or public employees within the State of
27 California, and each of the Defendants resides within this District and/or performs official
28 duties within this District.  This Court, accordingly, has personal jurisdiction over each of

COMPLAINT

1  the Defendants.  Venue is proper within the Eastern District of California under 28 U.S.C.

2  section 1391(b) because the events and omissions giving rise to Plaintiffs' claims

3  occurred or will occur in the City of Sacramento, which is located within the Eastern

4  District.

5                                                    **PARTIES**

6          10.   Plaintiff LANDSLIDE COMMUNICATIONS, INC. ("Landslide") is a

7  California corporation in good standing, qualified to do business in California, which has

8  complied with all licensing requirements as a licensed corporation.  Landslide's principal

9  place of business is in the City of Laguna Niguel, County of Orange, and State of

10  California.  Landslide is in the business of producing slate mailers supporting or opposing

11  candidates and ballot measures in elections throughout California.  Landslide produces

12  approximately six different slate mailers, each of which is tailored to a specific electoral

13  jurisdiction and portion of the electorate.  The Landslide slate mailer that is most directly

14  implicated by Section 84305.7 is the California Public Safety Newsletter and Voter Guide

15  (the "public safety slate mailer").  For a negotiated fee, Landslide includes a campaign

16  message, often containing a photograph or logo along with specified wording, in favor of

17  or against specified candidates or ballot measures.  In the June 2012 election cycle,

18  Landslide mailed nearly six million slate mailers to voters throughout California.  Of

19  these, approximately 1,216,649 public safety slate mailers were mailed to voters.

20  Plaintiffs face substantial criminal, civil and/or administrative penalties if they are found

21  to have violated this statute. Their rights therefore are being chilled as they do not want to

22  risk prosecution.

23          11.   Plaintiff JAMES V. LACY ("Lacy") is the President of Landslide.  Lacy's

24  principal place of business is in the City of Laguna Niguel, County of Orange, and State

25  of California.  As President of Landslide, and as the person who supervises and directs

26  Landslide's production and mailing of its slate mailers, including its public safety slate

27  mailer, Lacy faces substantial criminal, civil and/or administrative penalties if Section

28  84305.7 is found to have been violated.

12. Defendant STATE OF CALIFORNIA (the "State") is the governmental entity which, via its Legislature and Governor, passed and signed Senate Bill 488 into law and codified it in the Government Code as Section 84305.7. Plaintiffs are informed and believe that if they violate Section 84305.7, the State, through its Attorney General, through its County District Attorneys, and/or through its administrative agencies, will pursue them for criminal penalties, administrative fines, or civil penalties as contemplated in the Political Reform Act.

13. Defendant KAMALA HARRIS is the Attorney General of the State of California. Under Article 5, Section 13 of the California Constitution, she is the "chief law officer of the State," with a duty "to see that the laws of the state are uniformly and adequately enforced." This grants her "direct supervision over every district attorney and sheriff and over such other law enforcement officers as may be designated by law." Id.; see Cal. Gov't. Code sections 12524, 12550, 12560. She "has charge, as attorney, of all legal matters in which the State is interested." Cal. Gov't. Code section 12511. As Attorney General, Defendant Harris also directs the California Department of Justice. Cal. Gov't. Code section 12510.

14. Defendant FAIR POLITICAL PRACTICES COMMISSION OF THE STATE OF CALIFORNIA ("FPPC") is the State administrative agency with primary responsibility for interpreting and enforcing the Political Reform Act. Plaintiffs are informed and believe that if they violate Section 84305.7, the FPPC will pursue them for an administrative fine or sue them for civil penalties as contemplated in the Political Reform Act.

15. Defendant ANN RAVEL is the Chair of the FPPC. In her capacity as Chair she oversees the operations of the FPPC, which will include possible actions against Plaintiffs if they are found to have violated Section 84305.7.

COMPLAINT

### GENERAL ALLEGATIONS

### California Government Code section 84305.7

16.   California Government Code section 84305.7 states:

"(a) If a slate mailer organization sends a slate mailer or other mass mailing that displays a logo, insignia, emblem, or trademark that is identical or substantially similar to the logo, insignia, emblem, or trademark of a governmental agency, and that would reasonably be understood to imply the participation or endorsement of that governmental agency, the slate mailer organization shall obtain the express written consent of the governmental agency associated with the logo, insignia, emblem, or trademark prior to using the logo, insignia, emblem, or trademark in the slate mailer or other mass mailing.

(b) If a slate mailer organization sends a slate mailer or other mass mailing that displays a logo, insignia, emblem, or trademark that is identical or substantially similar to the logo, insignia, emblem, or trademark of a nongovernmental organization that represents law enforcement, firefighting, emergency medical, or other public safety personnel, and that would reasonably be understood to imply the participation or endorsement of that nongovernmental organization, the slate mailer organization shall obtain the express written consent of the nongovernmental organization associated with the logo, insignia, emblem, or trademark prior to using the logo, insignia, emblem, or trademark in the slate mailer or other mass mailing.

(c) If a slate mailer organization sends a slate mailer or other mass mailing that identifies itself or its source material as representing a nongovernmental organization with a name that includes the term "peace officer," "reserve officer," "deputy," "deputy sheriff," "sheriff," "police," "highway patrol," "California Highway Patrol," "law enforcement," "firefighter," "fire marshal," "paramedic," "emergency medical technician," "public safety," or any other term that would reasonably be understood to imply that the organization is composed of, or affiliated with, law enforcement, firefighting, emergency medical, or other public safety personnel, the slate mailer or mass mailing shall disclose on the outside of each piece of mail and on at least one of the inserts included with each

piece of mail in no less than 12-point roman type, which shall be in a color or print that contrasts with the background so as to be easily legible, the total number of members in the organization identified in the slate mailer or mass mailing." A true and correct copy of the statute is attached hereto as Exhibit "1" and incorporated herein by this reference.

<u>The California Public Safety Newsletter and Voter Guide</u>

17. Plaintiffs are informed and believe that their "California Public Safety Newsletter and Voter Guide" falls within the purview of Section 84305.7(c) in that it identifies itself or its source material as representing a nongovernmental organization with a name that includes the term "public safety," or other terms that would reasonably be understood to imply that the organization is composed of, or affiliated with, law enforcement, firefighting, emergency medical, or other public safety personnel.

18. For example, Plaintiffs' June 2012 public safety slate mailer included the phrases "California Public Safety Voter Guide" and "California Public Safety Newsletter and Voter Guide" and included photographs of a firefighter fighting a fire, a police car, and an air ambulance helicopter. A true and correct copy of Plaintiffs' June 2012 public safety slate mailer is attached hereto as Exhibit "2" and incorporated herein by this reference.

19. Plaintiffs are contractually bound to mail hundreds of thousands of copies of their public safety slate mailer in connection with the June 2014 primary election, and also expect to be mailing hundreds of thousands, or millions, of copies of the slate mailer in connection with the November 2014 election and in other elections.

20. Plaintiffs are informed and believe, and based thereon allege, that if they mail their public safety slate mailer without disclosing the number of members of the public safety association it references, they will violate the law and face substantial legal penalties.

COMPLAINT

1

Federal Court Jurisprudence

2      21.   The United States Supreme Court has stated in no uncertain terms that laws

3   burdening core political speech face the highest level of scrutiny: "When a law burdens

4   core political speech, we apply "exacting scrutiny," and we uphold the restriction only if

5   it is narrowly tailored to serve an overriding state interest." McIntyre v. Ohio Elections

6   Commission (1995) 514 U.S. 334, 335.  In McIntyre, the Court found that an Ohio law

7   prohibiting the distribution of anonymous campaign literature was unconstitutional and

8   specifically noted anonymity as an aspect of the freedom of speech protected by the First

9   Amendment. Id. at 342.

10      22.   The Ninth Circuit Court of Appeals has expressed its concerns about these

11   types of laws by invalidating a Nevada law which compelled political speech on

12   campaign mailers.  See ACLU v. Heller, 378 F.3d 979 (9th Cir. 2004).  There, a statute

13   requiring entities to publish the names and addresses of financial sponsors in regard to an

14   election was found to be unconstitutional.  The Court found that the content-based

15   regulation of core political speech was not narrowly tailored enough to serve the interests

16   claimed by the state. Id.

17      23.   In California Prolife Council v. Scully (2001) Civ. S-96-1965, the United

18   States District Court for the Eastern District of California determined that requiring the

19   publication of specified information on slate mailers failed to satisfy a compelling state

20   interest and thus was not justified.  There, the required publication of three dollar signs

21   ($$$) to show that a political message had been paid for, the multiple appearances of

22   certain disclaimers, and the identification of $50,000 ballot measure contributors were

23   permanently enjoined.

24      24.  In Levine v. Fair Political Practices Commission (2002) 222 F.Supp.2d 1182,

25   the same United States District Court enjoined two state laws which over-regulated slate

26   mailers by requiring them to contain certain disclaimers explaining when the mailers

27   mentioned a political party and the views of that political party regarding the candidate or

28

8                                    COMPLAINT

1 ballot measure.  The Court found that such compelled speech was overly broad and did

2 not properly serve the purported purposes of preventing voter confusion and fraud.

3                                 The State Legislature's Bill Analysis

4         25.   In the California State Assembly Committee on Elections and Redistricting's

5 July 5, 2011 Bill Analysis, the Legislative staff highlighted some of the constitutional

6 concerns regarding SB 488's compelled speech requirements, stating:

7       •      "This measure could be interpreted as a violation of the United States and

8              California Constitutions' rights to free speech;"

9       •      "While the right to freedom of speech is not absolute, when a law burdens

10             core political speech, the restrictions on speech must be 'narrowly tailored to

11             serve an overriding state interest;"

12      •      "The United States Supreme Court has been particularly wary of laws that

13             compel political speech;" and

14      •      The United States Supreme Court [in McIntyre v. Ohio Elections

15             Commission (1995) 514 U.S. 334] "found that an Ohio law that prohibited

16             the distribution of anonymous campaign literature was unconstitutional."

17             (See Bill Analysis prepared by Ethan Jones for Assembly E. & R., at page 5,

18             a true and correct copy of which is attached hereto as Exhibit 3.)

19 Even though the Legislative staff highlighted these constitutional deficiencies, the

20 Legislature nevertheless passed SB 488 and the Governor signed it, thus necessitating this

21 lawsuit.

22                                 The Importance of Slate Mail

23        26.   For at least the past three decades, slate mail has been an important medium

24 of campaigning in California elections.  Because the costs of slate mail are typically

25 shared by many campaigns, the cost to an individual is usually drastically reduced.  For

26 example, slate mail generally costs political advertisers only a fraction of what it would

27 cost in postage alone for a campaign to send its own mail, and in some cases, slate mail

28 costs less than a penny per "piece."  Therefore, slate mail, is typically the most

                                        9                          COMPLAINT

economical means of campaigning and sometimes the only feasible means of
campaigning, especially for campaigns with limited funding and for less well-known
offices.

27.   Slate mail publishers face intense competition, both from other slate mail
publishers and from other campaign media.  Competition requires slate mail publishers to
pass savings from shared expenses along to the candidates and ballot measure campaigns
who are the slate mail publishers' clients.

28.   In addition to its benefits as a particularly inexpensive form of campaigning,
slate mail lends itself especially well to campaigning on the basis of particular ideas.
Because slate mail by definition includes several campaigns in one mailing, it lends itself
to coalition campaigning.  For this reason and also because slate mail is typically targeted
to members of a particular party or group, slate mail also lends itself to party and
coalition-based appeals for support.  Regulation of the content of slate mail must
therefore be regarded as content-based regulation.

### The Law's Chilling and Prejudicial Effect on Plaintiffs

29.   Defendants intend to enforce Government Code section 84305.7 against
Plaintiffs, as well as against other slate mail publishers.

30.   Plaintiffs reasonably believe that Section 84305.7's provisions will have a
serious prejudicial effect on the slate mailers they produce and will distort the political
messages that they and their political clients wish to communicate to voters.  Plaintiffs
reasonably believe that the distortion will be caused by the stigmatizing effect of having
to identify the number of members of the public safety-related organization that is
distributing the slate mail.

31.   The slate mail provisions require Plaintiffs and other slate mailer
organizations to include messages that they do not wish to include.  As such, the slate
mail provisions constitute direct infringements on the content of political speech.

**FIRST CAUSE OF ACTION**

**INJUNCTIVE RELIEF TO PREVENT
VIOLATIONS OF THE FIRST AMENDMENT TO
THE UNITED STATES CONSTITUTION (42 U.S.C. § 1983)**
**(Against all Defendants)**

32.   Plaintiffs hereby reallege and incorporate by reference the allegations contained in paragraphs 1 through 31 as if fully set forth herein.

33.   The provisions of Section 84305.7 that require certain slate mailer organizations to publish the number of members on certain slate mailers and mass mailings violate Plaintiffs' First Amendment rights to free speech and association because the provisions are unconstitutionally vague, overbroad, burden speech without being appropriately tailored to the government's stated goals, and require the compelled disclosure of membership information.

34.   The provisions of Section 84305.7 that require certain slate mailer organizations to provide membership numbers violate the First Amendment because they apply to some organizations but not others without sufficient justification.

35.   Upon information and belief, Defendants, acting under color of state law, will enforce the challenged law against Plaintiffs, in violation of their First Amendment rights.

36.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have and will suffer irreparable harm which necessitates injunctive relief.

**SECOND CAUSE OF ACTION**

**INJUNCTIVE RELIEF TO PREVENT
VIOLATIONS OF DUE PROCESS UNDER THE FOURTEENTH AMENDMENT
TO THE UNITED STATES CONSTITUTION (42 U.S.C. § 1983)**
**(Against all Defendants)**

37.   Plaintiffs hereby re-allege and incorporate by reference the allegations contained in paragraphs 1 through 31 as if fully set forth herein.

38.   The language identifying which organizations must disclose certain information and under what circumstances is impermissibly vague in that persons of common intelligence could easily reach different conclusions.  This problem manifests itself unfairly because an entity which reads the provisions too narrowly is subject to

COMPLAINT

criminal prosecution and punishment, and an entity that reads them too broadly suffers a greater infringement of First Amendment rights than the statute requires. This statute therefore violates due process.

39.   Upon information and belief, Defendants, acting under color of state law, will enforce the challenged law against Plaintiffs, in violation of their due process rights.

40.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have and will suffer irreparable harm which necessitates injunctive relief.

## THIRD CAUSE OF ACTION

### INJUNCTIVE RELIEF TO PREVENT VIOLATIONS OF EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (42 U.S.C. § 1983)
#### (Against all Defendants)

41.   Plaintiffs hereby re-allege and incorporate by reference the allegations contained in paragraphs 1 through 31 as if fully set forth herein.

42.   The provisions of Section 84305.7 that require certain organizations to provide the number of members violate the Fourteenth Amendment because they apply to some organizations, but not others, without sufficient justification.

43.   Upon information and belief, Defendants, acting under color of state law, will enforce the challenged law against Plaintiffs, in violation of their equal protection rights.

44.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have and will suffer irreparable harm which necessitates injunctive relief.

## FOURTH CAUSE OF ACTION

### DECLARATORY RELIEF
#### (Against all Defendants)

45.   Plaintiffs hereby reallege and incorporate by reference the allegations contained in paragraphs 1 through 31 as if fully set forth herein.

46.   Based on the foregoing, this Court should declare that Section 84305.7(c) is unconstitutional on its face and/or as applied to Plaintiffs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek the following relief:

1.     A preliminary injunction prohibiting Defendants, their agents, representatives, employees, and all persons acting pursuant to their direction and control, from taking any steps to enforce Government Code section 84305.7(c) against Plaintiffs or others;

2.     A declaration that Government Code section 84305.7(c) is unconstitutional on its face and/or as applied to Plaintiffs;

3.     Costs and attorney's fees incurred in this action pursuant to 42 U.S.C. Section 1988 and other applicable authority; and

4.     Such other and further relief as the Court deems just and equitable.

Dated: April 11, 2013                          Respectfully Submitted:


                                    By:     _Erika M. Boyd_
                                            Erika M. Boyd
                                            The Sutton Law Firm, PC
                                            Attorneys for Plaintiffs LANDSLIDE
                                            COMMUNICATIONS, INC. and JAMES V.
                                            LACY, IN HIS CAPACITY OF PRESIDENT OF
                                            LANDSLIDE COMMUNICATIONS, INC.

# EXHIBIT 1

CALIFORNIA GOVERNMENT CODE

**§ 84305.7.   Slate Mailer Requirements; Use of Logos or "Public Safety" Names.**

(a) If a slate mailer organization sends a slate mailer or other mass mailing that displays a logo, insignia, emblem, or trademark that is identical or substantially similar to the logo, insignia, emblem, or trademark of a governmental agency, and that would reasonably be understood to imply the participation or endorsement of that governmental agency, the slate mailer organization shall obtain the express written consent of the governmental agency associated with the logo, insignia, emblem, or trademark prior to using the logo, insignia, emblem, or trademark in the slate mailer or other mass mailing.

(b) If a slate mailer organization sends a slate mailer or other mass mailing that displays a logo, insignia, emblem, or trademark that is identical or substantially similar to the logo, insignia, emblem, or trademark of a nongovernmental organization that represents law enforcement, firefighting, emergency medical, or other public safety personnel, and that would reasonably be understood to imply the participation or endorsement of that nongovernmental organization, the slate mailer organization shall obtain the express written consent of the nongovernmental organization associated with the logo, insignia, emblem, or trademark prior to using the logo, insignia, emblem, or trademark in the slate mailer or other mass mailing.

(c) If a slate mailer organization sends a slate mailer or other mass mailing that identifies itself or its source material as representing a nongovernmental organization with a name that includes the term "peace officer," "reserve officer," "deputy," "deputy sheriff," "sheriff," "police," "highway patrol," "California Highway Patrol," "law enforcement," "firefighter," "fire marshal," "paramedic," "emergency medical technician," "public safety," or any other term that would reasonably be understood to imply that the organization is composed of, or affiliated with, law enforcement, firefighting, emergency medical, or other public safety personnel, the slate mailer or mass mailing shall disclose on the outside of each piece of mail and on at least one of the inserts included with each piece of mail in no less than 12-point roman type, which shall be in a color or print that contrasts with the background so as to be easily legible, the total number of members in the organization identified in the slate mailer or mass mailing.

History: Added by Stats. 2012, Ch. 865.

EXHIBIT 2

Policy Issues Institute • 5405 Alton Pkwy, Ste. 5A • Irvine, CA 92604
California Public Safety Voter Guide is a Special Project of the Policy Issues Institute

# California Public Safety
## NEWSLETTER AND VOTER GUIDE

PAGE 1

ADVERTISEMENT

**City of San Diego**

**YES** Pension Reform That's Fair!
**YES on Proposition B***
Stops Pension Spiking. Nearly $1 Billion in savings means more funding for street repairs & reinstating library hours.

**Republican Cmte, Dist 78**
Thomas Webb
Jesse Gipe
Jean Roesch
John "Woody" Woodrum
Richard Bailey
Julio DeGuzman Jr.



REVIEW
For in-depth discussion on California politics, visit California Political Review online at www.capoliticalreview.com

**Superior Court Judge, Ofc 24**
**David Berry***
Law enforcement's choice. Endorsed by District Attorney, Deputy Sheriffs, local police officers, Mayor Jerry Sanders.

**Superior Court Judge, Ofc 25**
**Jim Miller***
Endorsed by the Republican Party, Lincoln Club, Senators Anderson and Wyland, Firefighters and Police Officers.

**Superior Court Judge, Ofc 34**
**Gary Kreep***
No deals with criminal predators. Heard over 1,000 cases as Judge Pro-Tem. Family Law Settlement Judge. UCSD and USD Law school graduate. One special interest: YOU

**San Diego Mayor**
**Nathan Fletcher**
Nathan authored Chelsea's Law and showed true leadership in forging a bipartisan solution to punishing violent sexual predators.

**Elizabeth Emken***
**U.S. Senate**
The ONLY candidate for US Senate officially endorsed by the California Republican Party. Emken is the Conservative Choice!

**No on Prop. 29**
Prop. 29 is FLAWED: new $735 million tax funds can be spent out of state. No accountability. NO on 29!

ADVERTISEMENT
NO on 29
CALIFORNIANS AGAINST OUT-OF-CONTROL TAXES AND SPENDING

NONPROFIT
U.S. POSTAGE
PAID
PII

REQUIRED BY LAW - NOTICE TO VOTERS: THIS DOCUMENT WAS PREPARED BY California Public Safety Voter Guide, NOT AN OFFICIAL POLITICAL PARTY ORGANIZATION. Appearance in this mailer does not necessarily imply endorsement of, or opposition to, any issues set forth in this mailer. Appearance is paid for and authorized by each candidate and ballot measure which is designated by an *.

Published Irregularly by California Public Safety Voter Guide • 5405 Alton Pkwy. Ste. 5A, Irvine, CA 92604

# California Public Safety Newsletter and Voter Guide

JUNE 5, 2012 • VOLUME 2 • NUMBER 1

PAGE 2

ADVERTISEMENT







## Elizabeth Emken* U.S. SENATE

- Stop runaway spending
- REPEAL Obamacare
- Cut taxes and fees
- YES to new U.S. oil drilling

**OFFICIALLY ENDORSED by the California Republican Party**

**Emken is the Conservative Choice!**   www.Emken2012.com

## No on Proposition 29*

Prop. 29 is seriously flawed: $735 million in new taxes. **Funds can be spent out of state, instead of creating jobs here in California.** No new funds for cancer treatment. New bureaucracy. Political appointees can spend $125 million annually on real estate, salaries and overhead. Cancer research is important, but 29 has no strict controls or accountability to ensure funds are spent wisely. NO on 29!

CALIFORNIANS AGAINST OUT-OF-CONTROL TAXES AND SPENDING

NO on 29

Stop the Scam!

## No on Proposition 28*

Prop. 28 is a SCAM! Legislators will DOUBLE their terms from six to twelve years!

STOP 28

# Emergency Medical Services Training: Assembly Bill 1245

## By James V. Lacy

One of the most important things I learned as a member of the Orange County Fire Authority Board of Directors was the life-saving importance of competent emergency medical services provided to the injured by our emergency response professionals. That is why I think it is so important for legislators to get behind professional firefighters' efforts to pass Assembly Bill 1245 (Das Williams, Santa Barbara), which authorizes a higher standard of emergency medical service training regulations by allowing the California Emergency Medical Services Authority to create standards authorizing emergency responder training, consistent with the rules that have been promulgated by the U.S. Department of Transportation. You can help support and improve emergency services by contacting your State Senator and Assembly member and asking them to vote for AB 1245. The life that is saved may be your own!

**James V. Lacy served as a member of the Orange County Fire Authority from 2002-2006.**

# EXHIBIT 3

                                                      SB 488
                                                      Page 1

Date of Hearing:   July 5, 2011

            ASSEMBLY COMMITTEE ON ELECTIONS AND REDISTRICTING
                            Paul Fong, Chair
            SB 488 (Correa) - As Introduced:  February 17, 2011

    SENATE VOTE  :  28-7

SUBJECT  :  Political Reform Act of 1974: slate mailers.

    SUMMARY  :   Requires a slate mailer that represents the position
of a public safety organization to include specified information
about the organization's membership.  Prohibits the use of a
logo of a governmental organization or of specified
non-governmental organizations in a slate mailer without the
written consent of the organization.  Specifically,  this bill  :

1) Requires a slate mailer organization to obtain express written
   consent from a governmental agency prior to using the logo,
   insignia, emblem, or trademark of the agency, or a
   substantially similar logo, insignia, emblem, or trademark, in
   a slate mailer or other mass mailing, if the use of the item
   would reasonably be understood to imply the participation or
   endorsement of that agency.

2) Requires a slate mailer organization to obtain express written
   consent from a nongovernmental organization that represents
   law enforcement, firefighting, emergency medical, or other
   public safety personnel, prior to using the logo, insignia,
   emblem, or trademark of the organization, or a substantially
   similar logo, insignia, emblem, or trademark, in a slate
   mailer or other mass mailing, if the use of the item would
   reasonably be understood to imply the participation or
   endorsement of that organization.

3) Requires a slate mailer organization that sends a slate mailer
   or other mass mailing that identifies itself or its source
   material as representing a nongovernmental organization with a
   name that includes the term "officer," "peace officer,"
   "reserve officer," "deputy," "deputy sheriff," "police,"
   "highway patrol," "California Highway Patrol," "law
   enforcement," "firefighter," "fire marshal," "paramedic,"
   "emergency medical technician," "public safety," or any other
   term that would reasonably be understood to imply that the

                                                      SB 488
                                                      Page 2

   organization is composed of, or affiliated with, law
   enforcement, firefighting, emergency medical, or other public
   safety personnel, to disclose the total number of members in
   the organization identified and the number of members working
   or living within the county in which the slate mailer or mass
   mailing is being delivered.  Requires this disclosure to be
   included on the outside of each piece of mail and on at least
   one of the inserts included with each piece of mail in no less
   than 12-point roman type, which shall be in a color or print
   that contrasts with the background so as to be easily legible.

4) Makes various findings and declarations.

    EXISTING LAW  :

1) Defines a "slate mailer" as a mass mailing that supports or
   opposes a total of four or more candidates or ballot measures.

2) Defines a "slate mailer organization" as a person who is
   involved in the production of one or more slate mailers,
   exercises control over the selection of the candidates and
   measures to be supported or opposed in the slate mailers, and
   receives or is promised payments totaling $500 or more in a
   calendar year for the production of one or more slate mailers.
    Provides that none of the following are slate mailer
   organizations:

   a)   A candidate or officeholder or the controlled committee

b)   An official committee of any political party;

c)   A legislative caucus committee; or,

d)   A committee primarily formed to support or oppose a
     candidate, officeholder, or ballot measure.

3) Prohibits a slate mailer organization or a committee primarily
   formed to support or oppose one or more ballot measures from
   sending a slate mailer unless it contains all of the
   following:

a)   The name, street address, and city of the slate mailer
     organization or committee on the outside of each piece of
     slate mail and on at least one of the inserts included with

                                              SB 488
                                              Page  3

     each piece of slate mail in no less than 8-point type;

b)   A notice, in no less than 8-point type, that consists of
     the following statement:

     ---------------------------------------------------------
     |                  NOTICE TO VOTERS                      |
     |THIS DOCUMENT WAS PREPARED BY (name of slate mailer     |
     |organization or committee primarily formed to support   |
     |or oppose one or more ballot measures), NOT AN OFFICIAL |
     |POLITICAL PARTY ORGANIZATION.  Appearance in this       |
     |mailer does not necessarily imply endorsement of, or    |
     |opposition to, any issues set forth in this mailer.     |
     |Appearance is paid for and authorized by each candidate |
     |and ballot measure which is designated by an *.         |
     ---------------------------------------------------------

c)   An asterisk (*) to designate each candidate and each
     ballot measure that has paid to appear in the slate mailer
     in the same type size, style, color, and legibility as is
     used for the name of the candidate or the ballot measure
     name or number and position advocated.

d)   The political party affiliation of a candidate appearing
     in the slate mailer, in no less than 9-point type, if the
     candidate is not running for non-partisan office and is a
     member of a political party differing from the political
     party with which the mailer appears by representation or
     indicia to represent.

4) Makes it a misdemeanor for a person to do any of the
   following:

a)   To use the Great Seal of the State of California in any
     campaign literature or mass mailing with intent to deceive
     the voters;

b)   To use the seal of a city in any campaign literature or
     mass mailing with intent to deceive the voters;

c)   To use the seal of the California Supreme Court, an
     appellate court, or a superior court in any campaign
     literature or mass mailing with intent to deceive the
     voters;

                                              SB 488
                                              Page  4

d)   To use the seal of a county, school district, special or
     other district, or any board, commission, or agency of a
     local jurisdiction in any campaign literature or mass
     mailing with intent to deceive the voters; or,

e)   To use the official seal or insignia of any public

on the envelope in which the simulated ballot or simulated
sample ballot is mailed or otherwise delivered.

5)Creates the Fair Political Practices Commission (FPPC), and
  makes it responsible for the impartial, effective
  administration and implementation of the Political Reform Act
  (PRA).

6)Provides that a violation of the PRA is punishable by
  criminal, civil, or administrative penalties.

  FISCAL EFFECT  :   According to the Senate Appropriations
Committee, pursuant to Senate Rule 28.8, negligible state costs.
 State-mandated local program; contains a crimes and infractions
disclaimer.

COMMENTS  :

 1)Purpose of the Bill  :  According to the author:

     Existing law requires most slate mailers to disclose
     three things:

          Who sent it.
          Who paid to appear on it.
          And a statement that it doesn't reflect
     official party positions.

     However, slate mailers can claim to represent just
     about any group or cause under the sun. SB 488 is an
     attempt to shed some light on slate mailers that claim
     to represent law enforcement, firefighting, and other
     public safety personnel.

     This bill would require slate mail organizations to
     obtain prior consent before using a logo or other
     emblem that is identical or substantially similar to

                                                    SB 488
                                                   Page  5

     one used by a government agency or other organization
     that represents any of these public safety groups.

     This bill would also require that a slate mailer
     purporting to represent one of these groups disclose
     the total number of members in their organization and
     the number of members working or living within the
     county where the slate mailer is sent.

     Unauthorized use of these logos in slate mailers can
     mislead the public as they attempt to distinguish
     between legitimate public safety communications and
     political advertisements.

     This bill is not groundbreaking-the law already
     requires numerous disclosure statements on not only
     slate mailers but virtually every other type of
     campaign communication-including mass mail, newspaper,
     radio and television advertisements.

  1)Constitutional Issues  :  This measure could be interpreted as a
    violation of the United States and California Constitutions'
    rights to free speech.  While the right to freedom of speech
    is not absolute, when a law burdens core political speech, the
    restrictions on speech generally must be "narrowly tailored to
    serve an overriding state interest,"  McIntyre v. Ohio
    Elections Commission  (1995), 514 US 334.  The United States
    Supreme Court has been particularly wary of laws that compel
    political speech.  In  McIntyre  , the United States Supreme
    Court found that an Ohio law that prohibited the distribution
    of anonymous campaign literature was unconstitutional.

  In fact, a federal district court cited  McIntyre  in two separate
    cases that raised questions about the constitutionality of
    California laws that required certain information to be
    included on slate mailers.

  In November 1996, California voters approved Proposition 208,
    which made various significant changes to the PRA.  Many of
    those changes were subsequently repealed or amended through
    the passage of Proposition 34, which was placed on the
    November 2000 ballot by SB 1223 (Burton), Chapter 102,

that were not affected by Proposition 34, however, were
provisions that required certain information and specified

                                            SB 488
                                            Page 6

     disclaimers to be included on slate mailers. Among those
     provisions was a requirement that slate mailers identify any
     candidate or ballot measure that had paid to be included in
     the slate mailer with three dollar signs ($$$), instead of
     with an asterisk (*), a requirement that certain information
     and disclaimers be included on every page of a slate mailer
     instead of appearing at least once on the slate mailer, and a
     requirement that slate mailers identify contributors who gave
     more than $50,000 to ballot measures.

  In  California Prolife Council PAC v. Scully  (2001), No. Civ.
     S-96-1965, the United States District Court for the Eastern
     District of California found that those provisions were
     unconstitutional, and the Court permanently enjoined them from
     enforcement.  In its decision, the Court found the slate
     mailer requirements to be "intrusive and extensive" compelled
     speech that could not be justified by the state's interests in
     informing voters, avoiding deception, and addressing the
     potential for corruption.

  Similarly, in  Levine v. Fair Political Practices Commission
     (2002), 222 F. Supp. 2d 1182, the same District Court issued a
     preliminary injunction against two state laws governing the
     content of slate mailers.  Those laws required any slate
     mailer that appeared to represent a political party to include
     a disclaimer whenever a candidate or position on a ballot
     measure endorsed in the slate mailer was different from the
     official endorsement of that political party.  In issuing the
     preliminary injunction, the court concluded that "forc[ing]
     slate mailer publishers to give space to [an] opposing view"
     was an overly broad way for the state to attempt to protect
     voters from confusion and fraud.  Subsequent to the issuance
     of the preliminary injunction, the parties in  Levine  reached a
     settlement, and the Legislature and the Governor modified the
     slate mailer disclaimer requirements through the passage of SB
     604 (Perata), Chapter 478, Statutes of 2004.

  In light of these decisions, the provisions of this bill may be
     susceptible to challenge on the grounds that the bill's
     requirements impermissibly burden the First Amendment rights
     of slate mailer organizations and of those candidates and
     other individuals who use slate mailers to communicate with
     voters.  In particular, provisions of this bill that require
     certain slate mailers to include a disclosure of the number of
     members of the organization sending the mailer on the mailer

                                            SB 488
                                            Page 7

     itself, including the number of members living or working in
     the county in which the mailer is delivered, could be viewed
     as compelled political speech that must be narrowly tailored
     to serve an overriding state interest.

   2)Public Safety Organizations Only  :  Provisions of this bill
     that require a slate mailer organization to obtain written
     consent prior to using the logo of a private organization and
     that require a slate mailer to include the number of members
     of the organization sending the slate mailer apply only when
     the slate mailer organization is using the logo of, or
     purports to represent, public safety organizations.  Nothing
     in this bill would protect private organizations that are not
     public safety organizations from the misuse of their logos in
     campaign mailers, nor would this bill require membership
     figures to be disclosed on slate mailers purporting to
     represent organizations that are not public safety
     organizations.  The findings and declarations of this bill
     maintain that it is essential for the public to be able to
     distinguish between legitimate public safety communications
     and political messages, and contend that voters may disregard

important because unlike public safety employees, public safety organizations are not protected against improper use. _

   3)Existing Protections : As noted above, existing law already
   makes it a crime to use an official seal or insignia of a
   state or local government agency in campaign literature or in
   a mass mailing with the intent to deceive the voters.  In
   light of these laws, the need to further require a slate
   mailer organization to obtain written permission from an
   agency prior to using its logo in a mailer is unclear.  While
   state law does not include similar criminal penalties for the
   use of the seal or insignia of a private organization in
   campaign literature with the intent to deceive voters, those
   private organizations may nonetheless have recourse for the
   unauthorized use of a logo in a campaign mailing under state
   or federal trademark laws. _

   4)Arguments in Support : In support of this bill, the
   Association for Los Angeles Deputy Sheriffs, the Los Angeles
   Probation Officers' Union, the Orange County Professional
   Firefighters Association, and the Riverside Sheriffs'
   Association, write:

                                     SB 488
                                     Page  8

      There is public trust given safety organizations on a
      daily basis.  If that trust is broken because of
      political deception, it might not return.
      Unauthorized use of logos, insignias, emblems, or
      trademarks identified with public safety departments,
      organizations, and professionals also puts a chasm
      between legitimate communication and political
      propaganda.  If law enforcement, for example, must
      issue an emergency warning to the public, there will
      be potential for citizen disregard of the information
      because it is assumed the message is associated with a
      political campaign or candidate that is not to be
      trusted.

   5)Arguments in Opposition : The American Association of
   Political Consultants (AAPC), in opposition to this bill,
   writes:

      The AAPC feels strongly that SB 488, as it is
      currently written, would have a chilling effect on the
      first amendment's right to freedom of speech and is
      therefore unconstitutional. Further, recourse for
      unauthorized use of trademarked logos is already
      available in existing laws: California Business and
      Professions Code Division 6. Business Rights: Chapter
      2 Model State Trademark Law Sec. 14200-14272 and
      should not be a part of this legislation.

      Recently, the Legislative Committee of the AAPC worked
      with the California Fair Political Practices
      Commission (FPPC) Chairman's Advisory Task Force to
      enhance regulations for slate mailers. These new
      reforms are now in place as a result of the work of
      the Task Force. AAPC believes that proposed changes to
      the Political Reform Act of 1974 such as SB 488, would
      best be addressed through a similar process, prior to
      legislation being introduced. _

   6)Previous Legislation : AB 374 (Matthews) of 2001, would have
   required slate mailers that represented the position of a
   peace officer or firefighter organization to disclose certain
   information on the organization's membership.  AB 374 was
   approved by this committee and by the Assembly, but
   subsequently was amended for an unrelated purpose.

                                     SB 488
                                     Page  9

Case 2:13-cv-00716-GEB-KJN  Document 1  Filed 04/11/13  Page 25 of 25

7) Political Reform Act. Voters adopted a political reform
initiative, Proposition 9, in 1974, that created the FPPC and
codified significant restrictions and prohibitions on
candidates, officeholders and lobbyists. That initiative is
commonly known as the PRA.  Amendments to the PRA that are not
submitted to the voters, such as those contained in this bill,
must further the purposes of the initiative and require a
two-thirds vote of both houses of the Legislature.

 REGISTERED SUPPORT / OPPOSITION  :

  Support

California Professional Firefighters (Sponsor)
Association for Los Angeles Deputy Sheriffs
California Clean Money Campaign
California Common Cause
Los Angeles County Probation Officers' Union
Los Angeles Police Protective League
Orange County Professional Firefighters Association
Riverside Sheriffs' Association

   Opposition

American Association of Political Consultants

  Analysis Prepared by  :     Ethan Jones / E. & R. / (916) 319-2094