1 | BRADLEY W. HERTZ, State Bar No. 138564
bhertz@campaignlawyers.com
2 | JAMES R. SUTTON, State Bar No. 135930
jsutton@campaignlawyers.com
3 | ERIKA M. BOYD, State Bar No. 259633
eboyd@campaignlawyers.com
4 | THE SUTTON LAW FIRM, PC
150 Post Street, Suite 405
5 | San Francisco, CA 94108
Tel: 415/732-7700
6 | Fax: 415/732-7701

7 | Attorneys for Plaintiffs
LANDSLIDE COMMUNICATIONS, INC.
8 | and JAMES V. LACY, IN HIS CAPACITY
AS PRESIDENT OF LANDSLIDE
9 | COMMUNICATIONS, INC.

10

11 | **THE UNITED STATES DISTRICT COURT**

12 | **FOR THE EASTERN DISTRICT OF CALIFORNIA**

13

14 | LANDSLIDE COMMUNICATIONS, | Case No. 2:13-CV-00716-GEB-KJN
INC. and JAMES V. LACY, IN HIS
15 | CAPACITY AS PRESIDENT OF | **FIRST AMENDED COMPLAINT**
LANDSLIDE COMMUNICATIONS, | **FOR DECLARATORY AND**
16 | INC. | **INJUNCTIVE RELIEF**

17 | Plaintiffs, | (FIRST AND FOURTEENTH
AMENDMENTS TO THE UNITED
18 | v. | STATES CONSTITUTION;
42 U.S.C. SECTION 1983)
19 | STATE OF CALIFORNIA; KAMALA
HARRIS, in her capacity as Attorney | Complaint Filed: April 11, 2013
20 | General of California; CALIFORNIA | Trial Date: None
FAIR POLITICAL PRACTICES
21 | COMMISSION; ANN RAVEL, in her
capacity as Chair of the Fair Political
22 | Practices Commission,

23 | Defendants.

24

25

26

27

28

1    This action arises out of a recently-enacted, unconstitutional state statute which

2  violates the United States Constitution and thus raises a federal question.  Plaintiffs

3  LANDSLIDE COMMUNICATIONS, INC. and JAMES V. LACY, IN HIS CAPACITY

4  AS PRESIDENT OF LANDSLIDE COMMUNICATIONS, INC. ("Plaintiffs"), by this

5  Complaint, allege as follows:

6                                    **INTRODUCTION**

7    1.    Plaintiffs seek this Court's protection from a recently-enacted statute –

8  California Government Code section 84305.7 – which unconstitutionally requires certain

9  types of public safety slate mailer organizations to disclose on their mailers the

10  organization's total number of members.

11    2.    This unconstitutional statute, enacted as part of California Senate Bill

12  488 ("SB 488") in 2012 and effective January 1, 2013, applies only to certain "slate

13  mailer organizations" and not to other slate mailer organizations or to the numerous other

14  types of organizations and entities that send out political mail.

15    3.    "Slate mailer" means "a mass mailing which supports or opposes a total of

16  four or more candidates or ballot measures." (Cal. Gov't. Code section 82048.3.)

17    4.    A "Slate mailer organization" denotes "any person who, directly or indirectly,

18  does all of the following:

19        (1) Is involved in the production of one or more slate mailers and exercises

20  control over the selection of the candidates and measures to be supported or opposed in

21  the slate mailers.

22        (2) Receives or is promised payments totaling five hundred dollars ($500) or

23  more in a calendar year for the production of one or more slate mailers." (Cal. Gov't.

24  Code section 82048.4(a).)

25    5.    A slate mailer organization, however, "shall not include any of the following:

26        (1) A candidate or officeholder or a candidate's or officeholder's controlled

27  committee.

28        (2) An official committee of any political party.

FIRST AMENDED COMPLAINT

1   (3) A legislative caucus committee.

2   (4) A committee primarily formed to support of oppose a candidate,

3   officeholder, or ballot measure." (Cal. Gov't. Code section 82048.4(b).)

4   6.   Slate mail is political speech in support of or in opposition to candidates

5   and/or ballot measures, and as such is at the core of the First Amendment's protection of

6   speech.

7   7.   This unconstitutional statute – specifically subsection (c) – applies only to

8   those slate mailer organizations that identify themselves as representing a

9   nongovernmental organization with a name that includes certain public safety-related

10  terms or "any other term that would reasonably be understood to imply that the

11  organization is composed of, or affiliated with, law enforcement, firefighting, emergency

12  medical, or other public safety personnel."

13  8.   This unconstitutional statute unlawfully discriminates against certain types of

14  speakers in the political process, unlawfully compels speech, and unlawfully imposes

15  content-based restrictions that do not serve a compelling governmental interest and are

16  not narrowly tailored to serve those purported interests.

17  9.   Infringement of political speech in this manner violates the First Amendment

18  to the United States Constitution and 42 U.S.C. section 1983 and has repeatedly been

19  struck down by the United States Supreme Court, the United States Courts of Appeals,

20  and the United States District Courts.

21  10.  The Political Reform Act of 1974, as amended (Cal. Gov't. Code

22  sections 81000, et seq.) provides for substantial criminal, civil and/or administrative

23  penalties against those entities and individuals who violate its provisions, and Plaintiffs'

24  constitutional rights are being unconstitutionally infringed upon and chilled by virtue of

25  this newly-enacted, misguided legislation.

26

27

28

3                    FIRST AMENDED COMPLAINT

1    11.   As a result of these constitutional and other legal defects, California

2    Government Code section 84305.7(c) is invalid, both facially and as applied to Plaintiffs.

3    Plaintiffs therefore seek declaratory relief: (1) declaring the statute inapplicable to

4    Plaintiffs; and (2) if applicable to Plaintiffs, declaring the statute invalid and

5    unconstitutional as applied to Plaintiffs.  Plaintiffs further seek injunctive relief to enjoin

6    and prevent the enforcement of this statutory subsection on the grounds that: (1) it

7    violates the First Amendment to the United States Constitution; (2) it violates due process

8    under the Fourteenth Amendment to the United States Constitution; and (3) it violates

9    equal protection under the Fourteenth Amendment to the United States Constitution.

10                                **JURISDICTION AND VENUE**

11    12.   This lawsuit alleges violations of Plaintiffs' rights under the First and

12    Fourteenth Amendments to the United States Constitution and 42 U.S.C. section 1983.

13    Accordingly, this Court has "federal question" jurisdiction over Plaintiffs' claims by

14    virtue of 28 U.S.C. sections 1331 and 1343, as well as under this Court's original

15    jurisdiction, under which the Court can entertain an action to redress a deprivation of

16    rights guaranteed by the United States Constitution.  This Court further has supplemental

17    jurisdiction over state law claims under 28 U.S.C. section 1367(a).  Declaratory and

18    injunctive relief are authorized by 28 U.S.C. sections 2201 and 2202.  (See also Federal

19    Rule of Civil Procedure 65.)

20    13.   The Defendants are all public entities or public employees within the State of

21    California, and each of the Defendants resides within this District and/or performs official

22    duties within this District.  This Court, accordingly, has personal jurisdiction over each of

23    the Defendants.  Venue is proper within the Eastern District of California under 28 U.S.C.

24    section 1391(b) because the events and omissions giving rise to Plaintiffs' claims

25    occurred or will occur in the City of Sacramento, which is located within the Eastern

26    District of California.

27

28

1

**PARTIES**

2      14.    Plaintiff LANDSLIDE COMMUNICATIONS, INC. ("Landslide") is a

3  California corporation in good standing, qualified to do business in California, which has

4  complied with all licensing requirements as a licensed corporation.  Landslide's principal

5  place of business is in the City of Laguna Niguel, County of Orange, and State of

6  California.  Landslide is in the business of producing slate mailers supporting or opposing

7  candidates and ballot measures in elections throughout California.  Landslide produces

8  approximately six different slate mailers, each of which is tailored to a specific electoral

9  jurisdiction and portion of the electorate.  The Landslide slate mailer that may be most

10  directly implicated by Section 84305.7 is the California Public Safety Newsletter and

11  Voter Guide (the "Public Safety Newsletter and Voter Guide").  For a negotiated fee,

12  Landslide includes a campaign message, often containing a photograph or logo along

13  with specified wording, in favor of or against specified candidates or ballot measures.

14  Typically, this mailer also contains information and expresses opinions related to public

15  safety but not to candidacies or ballot measures.  In the June 2012 election cycle,

16  Landslide mailed nearly six million slate mailers to voters throughout California.  Of

17  these, approximately 1,216,649 copies of the Public Safety Newsletter and Voter Guide

18  were mailed to voters.  Plaintiffs face substantial criminal, civil and/or administrative

19  penalties if they are found to violate this statute. Their rights therefore are being chilled,

20  as they do not want to risk prosecution.

21      15.    Plaintiff JAMES V. LACY ("Lacy") is the President of Landslide.  Lacy's

22  principal place of business is in the City of Laguna Niguel, County of Orange, and State

23  of California.  As President of Landslide, and as the person who supervises and directs

24  Landslide's production and mailing of its slate mailers, including its public safety slate

25  mailer, Lacy faces substantial criminal, civil and/or administrative penalties if Section

26  84305.7 is found to have been violated.

27

28

16.   Defendant STATE OF CALIFORNIA (the "State") is the governmental entity which, via its Legislature and Governor, passed and signed SB 488 into law and codified it in the California Government Code as Section 84305.7.  Plaintiffs are informed and believe that if they violate Section 84305.7, the State, through its Attorney General, its County District Attorneys, and/or its administrative agencies such as Defendant Fair Political Practices Commission of the State of California, will pursue them for criminal penalties, administrative fines, or civil penalties as contemplated in the Political Reform Act.

17.   Defendant KAMALA HARRIS is the Attorney General of the State of California.  Under Article 5, Section 13 of the California Constitution, she is the "chief law officer of the State," with a duty "to see that the laws of the state are uniformly and adequately enforced."  This grants her "direct supervision over every district attorney and sheriff and over such other law enforcement officers as may be designated by law." (Cal. Const., art. V, section 13.; see Cal. Gov't. Code sections 12524, 12550, and 12560.) Defendant Harris "has charge, as attorney, of all legal matters in which the State is interested." (Cal. Gov't. Code section 12511.)  As Attorney General, Defendant Harris also directs the California Department of Justice. (Cal. Gov't. Code section 12510.)

18.   Defendant FAIR POLITICAL PRACTICES COMMISSION OF THE STATE OF CALIFORNIA ("FPPC") is the State administrative agency with primary responsibility for interpreting and enforcing the Political Reform Act. (Cal. Gov't. Code section 83111.)  Plaintiffs are informed and believe that if they violate Section 84305.7, the FPPC will pursue them for an administrative fine or sue them for civil penalties as contemplated in the Political Reform Act.

19.   Defendant ANN RAVEL is the Chair of the FPPC.  In her capacity as Chair, Defendant Ravel oversees the operations of the FPPC, which will include possible actions against Plaintiffs if they are found to have violated Section 84305.7.

FIRST AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GENERAL ALLEGATIONS**

California Government Code section 84305.7

20.  California Government Code section 84305.7 states:

"(a) If a slate mailer organization sends a slate mailer or other mass mailing that displays a logo, insignia, emblem, or trademark that is identical or substantially similar to the logo, insignia, emblem, or trademark of a governmental agency, and that would reasonably be understood to imply the participation or endorsement of that governmental agency, the slate mailer organization shall obtain the express written consent of the governmental agency associated with the logo, insignia, emblem, or trademark prior to using the logo, insignia, emblem, or trademark in the slate mailer or other mass mailing.

(b) If a slate mailer organization sends a slate mailer or other mass mailing that displays a logo, insignia, emblem, or trademark that is identical or substantially similar to the logo, insignia, emblem, or trademark of a nongovernmental organization that represents law enforcement, firefighting, emergency medical, or other public safety personnel, and that would reasonably be understood to imply the participation or endorsement of that nongovernmental organization, the slate mailer organization shall obtain the express written consent of the nongovernmental organization associated with the logo, insignia, emblem, or trademark prior to using the logo, insignia, emblem, or trademark in the slate mailer or other mass mailing.

(c) If a slate mailer organization sends a slate mailer or other mass mailing that identifies itself or its source material as representing a nongovernmental organization with a name that includes the term "peace officer," "reserve officer," "deputy," "deputy sheriff," "sheriff," "police," "highway patrol," "California Highway Patrol," "law enforcement," "firefighter," "fire marshal," "paramedic," "emergency medical technician," "public safety," or any other term that would reasonably be understood to imply that the organization is composed of, or affiliated with, law enforcement, firefighting, emergency medical, or other public safety personnel, the slate mailer or mass mailing shall disclose on the outside of each piece of mail and on at least one of the inserts included with each

FIRST AMENDED COMPLAINT

1   piece of mail in no less than 12-point roman type, which shall be in a color or print that

2   contrasts with the background so as to be easily legible, the total number of members in

3   the organization identified in the slate mailer or mass mailing." A true and correct copy

4   of the statute is attached hereto as Exhibit "1" and incorporated by this reference.

5   Hereinafter, subsection (c) is periodically referred to as the "statutory subsection."

6                    The California Public Safety Newsletter and Voter Guide

7        21.   Plaintiffs are informed and believe that their "California Public Safety

8   Newsletter and Voter Guide" may be deemed by some or all of the Defendants to fall

9   within the purview of Section 84305.7(c) in that it may be seen by some or all of the

10  Defendants as identifying itself or its source material as representing a nongovernmental

11  organization with a name that includes the term "public safety," or other terms that would

12  reasonably be understood to imply that the organization is composed of, or affiliated with,

13  law enforcement, firefighting, emergency medical, or other public safety personnel. A

14  true and correct copy of Plaintiffs' June 2012 Public Safety Newsletter and Voter Guide

15  is attached hereto as Exhibit "2" and incorporated herein by this reference. Plaintiffs

16  intend to publish mailings similar in format in future elections.

17       22.   Plaintiffs assert that their Public Safety Newsletter and Voter Guide does not

18  fall within the purview of Section 84305.7(c) because it does not identify itself or its

19  source material as representing a nongovernmental organization. Although the Public

20  Safety Newsletter and Voter Guide includes the term "public safety" and states that it is a

21  "Special Project of the Policy Issues Institute," its content makes it clear to the recipient

22  that it is a newsletter and voter guide, and does not represent any membership

23  organization.

24       23.   Insofar as Section 84305.7(c) applies only to slate mailer organizations that

25  send slate mailers or other mass mailings that identify themselves or their source material

26  as representing a nongovernmental organization with a name that includes the term

27  "peace officer," "reserve officer," "deputy," "deputy sheriff," "sheriff," "police,"

28  "highway patrol," "California Highway Patrol," "law enforcement," "firefighter," "fire

marshal," "paramedic," "emergency medical technician," "public safety," or any other term that would reasonably be understood to imply that the organization is composed of, or affiliated with, law enforcement, firefighting, emergency medical, or other public safety personnel, Plaintiffs allege that the statutory subsection does not apply to them, and seeks this Court's declaration in this regard.

24. The apparent purpose of Section 84305.7(c) is to dictate that certain slate mailer organizations devote a portion of the scarce space on their mailers to information desired by the state about the number of members of an organization, at the expense of information of the publisher's choice. Most mailers that imply that they are published by or affiliated with a membership organization are exempt from this requirement. Yet if Section 84305.7(c) is held to apply to Plaintiffs, their mailings will be subject to this expropriation of space, even though their mailings do not imply that they are published by or affiliated with a membership organization. So construed, Section 84305.7(c) is manifestly arbitrary and irrational and, on this ground, unconstitutionally discriminatory.

25. Plaintiffs are contractually bound to mail hundreds of thousands of copies of their Public Safety Newsletter and Voter Guide in connection with the June 2014 primary election. Plaintiffs also expect to be mailing hundreds of thousands, or millions, of copies of the Public Safety Newsletter and Voter Guide in connection with the November 2014 election and in various other elections.

26. Plaintiffs are informed and believe, and based thereon allege, that if they mail their Public Safety Newsletter and Voter Guide without disclosing the number of members of a non-existent membership organization, they will violate the law and face substantial legal penalties.

### Federal Court Jurisprudence

27. The United States Supreme Court has stated in no uncertain terms that laws burdening core political speech face the highest level of scrutiny: "When a law burdens core political speech, we apply "exacting scrutiny," and we uphold the restriction only if it is narrowly tailored to serve an overriding state interest." (McIntyre v. Ohio Elections

1   Commission (1995) 514 U.S. 334, 335.)  In McIntyre, the Court found that an Ohio law

2   prohibiting the distribution of anonymous campaign literature was unconstitutional and

3   specifically noted anonymity as an aspect of the freedom of speech protected by the First

4   Amendment. (Id. at 342.)

5       28.  The Ninth Circuit Court of Appeals has expressed its concerns about these

6   types of laws by invalidating a Nevada law which compelled political speech on

7   campaign mailers.  (See ACLU v. Heller, 378 F.3d 979 (9th Cir. 2004).)  There, a statute

8   requiring entities to publish the names and addresses of financial sponsors in regard to an

9   election was found to be unconstitutional.  The Court found that the content-based

10  regulation of core political speech was not narrowly tailored enough to serve the interests

11  claimed by the state. (Id.)

12      29.  In California Prolife Council v. Scully (2001) Civ. S-96-1965, the United

13  States District Court for the Eastern District of California determined that requiring the

14  publication of specified information on slate mailers failed to satisfy a compelling state

15  interest and thus was not justified.  There, the required publication of three dollar signs

16  ($$$) to show that a political message had been paid for, the multiple appearances of

17  certain disclaimers, and the identification of $50,000 ballot measure contributors were

18  permanently enjoined.

19      30.  In Levine v. Fair Political Practices Commission (2002) 222 F.Supp.2d 1182,

20  the same United States District Court enjoined two state laws which over-regulated slate

21  mailers by requiring them to contain certain disclaimers explaining when the mailers

22  mentioned a political party and the views of that political party regarding the candidate or

23  ballot measure.  The Court found that such compelled speech was overly broad and did

24  not properly serve the purported purposes of preventing voter confusion and fraud.

The State Legislature's Bill Analysis

26      31.  In the California State Assembly Committee on Elections and Redistricting's

27  July 5, 2011 Bill Analysis, the Legislative staff highlighted some of the constitutional

28  concerns regarding SB 488's compelled speech requirements, stating:

1         •    "This measure could be interpreted as a violation of the United States and

2             California Constitutions' rights to free speech";

3         •    "While the right to freedom of speech is not absolute, when a law burdens

4             core political speech, the restrictions on speech must be 'narrowly tailored to

5             serve an overriding state interest' ";

6         •    "The United States Supreme Court has been particularly wary of laws that

7             compel political speech"; and

8         •    The United States Supreme Court [in <u>McIntyre v. Ohio Elections</u>

9             <u>Commission</u> (1995) 514 U.S. 334] "found that an Ohio law that prohibited

10            the distribution of anonymous campaign literature was unconstitutional."

11            (See Bill Analysis prepared by Ethan Jones for Assembly Elections &

12            Redistricting, at page 5, a true and correct copy of which is attached hereto as

13            Exhibit "3".)

14 Even though the Legislative staff highlighted these constitutional deficiencies, the

15 Legislature nevertheless passed SB 488 and the Governor signed it, thus necessitating this

16 lawsuit.

17                      <u>The Importance of Slate Mail</u>

18     32.   For at least the past three decades, slate mail has been an important medium

19 of campaigning in California elections. Because the costs of slate mail are typically

20 shared by many campaigns, the cost to an individual is usually drastically reduced. For

21 example, slate mail generally costs political advertisers only a fraction of what it would

22 cost in postage alone for a campaign to send its own mail, and in some cases, slate mail

23 costs less than a penny per "piece." Therefore, slate mail, is typically the most

24 economical means of campaigning and sometimes the only feasible means of

25 campaigning, especially for campaigns with limited funding and for less well-known

26 offices.

27     33.   Slate mail publishers face intense competition, both from other slate mail

28 publishers and from other campaign media. Competition requires slate mail publishers to

1  pass savings from shared expenses along to the candidates and ballot measure campaigns
2  who are the slate mail publishers' clients.

3       34.  In addition to its benefits as a particularly inexpensive form of campaigning,
4  slate mail lends itself especially well to campaigning on the basis of particular ideas.
5  Because slate mail by definition includes several campaigns in one mailing, it lends itself
6  to coalition campaigning.  For this reason and also because slate mail is typically targeted
7  to members of a particular party or group, slate mail also lends itself to party and
8  coalition-based appeals for support.  Regulation of the content of slate mail must
9  therefore be regarded as content-based regulation.

10                 The Law's Chilling and Prejudicial Effect on Plaintiffs

11       35.  Plaintiffs believe that Defendants intend to enforce California Government
12  Code section 84305.7, particularly subsection (c), against Plaintiffs, as well as against
13  other slate mail publishers.

14       36.  Plaintiffs believe that Section 84305.7, and particularly subsection (c), will
15  have a serious prejudicial effect on the Public Safety Newsletter and Voter Guide which
16  they produce, and will distort the political messages that they and their political clients
17  wish to communicate to voters.  Plaintiffs believe that the distortion will be caused by the
18  stigmatizing effect of having to identify the number of members of the purported public
19  safety-related organization that is distributing the slate mail, especially where the
20  organization is not a membership organization, has no members, and therefore will be
21  required to state that it has "0 members."  Plaintiffs believe that being forced to state that
22  the Public Safety Newsletter and Voter Guide has "0 members," when it is not even a
23  membership organization and never implied or stated that it had members, will have a
24  chilling, distorting, stigmatizing, and prejudicial effect on Plaintiffs.

25       37.  The slate mail provisions require Plaintiffs and other slate mailer
26  organizations to include messages that they do not wish to include.  As such, the slate
27  mail provisions constitute direct infringements on the content of political speech.

28

FIRST AMENDED COMPLAINT

## FIRST CAUSE OF ACTION

### DECLARATORY RELIEF THAT GOVERNMENT CODE SECTION 84305.7(c) DOES NOT APPLY TO PLAINTIFFS' PUBLIC SAFETY NEWSLETTER AND VOTER GUIDE
#### (Against all Defendants)

38.   Plaintiffs hereby reallege and incorporate by reference the allegations contained in paragraphs 1 through 37 as if fully set forth herein.

39.   Plaintiffs believe that Section 84305.7(c) does not apply to Plaintiffs' Public Safety Newsletter and Voter Guide (Exhibit 2) and to Plaintiffs' future Public Safety Newsletter and Voter Guides that follow the same format.

40.   Plaintiffs believe that Defendants are of the belief that Section 84305.7(c) does apply to Plaintiffs' Public Safety Newsletter and Voter Guide (Exhibit 2) and to Plaintiffs' future Public Safety Newsletter and Voter Guides that follow a similar format.

41.   Accordingly, there exists a case or controversy as between Plaintiffs and Defendants as to the applicability of Section 84305.7(c) to Plaintiffs' Public Safety Newsletter and Voter Guide and to Plaintiffs' future Public Safety Newsletter and Voter Guides that follow the same format, and it is appropriate for the Court to declare its view on this issue.

42.   Based on the foregoing, this Court should declare that Section 84305.7(c) does not apply to Plaintiffs' Public Safety Newsletter and Voter Guide (Exhibit 2) and to Plaintiffs' future Public Safety Newsletter and Voter Guides that follow a similar format.

## SECOND CAUSE OF ACTION

### DECLARATORY RELIEF THAT, TO THE EXTENT GOVERNMENT CODE SECTION 84305.7(c) APPLIES TO PLAINTIFFS' PUBLIC SAFETY NEWSLETTER AND VOTER GUIDE, THE STATUTORY SUBSECTION IS UNCONSTITUTIONAL AS APPLIED
#### (Against all Defendants)

43.   Plaintiffs hereby reallege and incorporate by reference the allegations contained in paragraphs 1 through 37 as if fully set forth herein.

44.   Plaintiffs believe that to the extent Section 84305.7(c) applies to Plaintiffs'

FIRST AMENDED COMPLAINT

1  Public Safety Newsletter and Voter Guide (Exhibit 2) and to Plaintiffs' future Public

2  Safety Newsletter and Voter Guides that follow a similar format, the statutory subsection

3  is unconstitutional as applied to Plaintiffs.

4      45.   Plaintiffs believe that Defendants are of the belief that Section 84305.7(c)

5  applies to Plaintiffs' Public Safety Newsletter and Voter Guide (Exhibit 2) and to

6  Plaintiffs' future Public Safety Newsletter and Voter Guides that follow a similar format,

7  and that the statutory subsection is not unconstitutional as applied to Plaintiffs.

8      46.   Accordingly, there exists a case or controversy as between Plaintiffs and

9  Defendants as to the constitutionality of Section 84305.7(c) to the extent that statutory

10  subsection applies to Plaintiffs' Public Safety Newsletter and Voter Guide and to

11  Plaintiffs' future Public Safety Newsletter and Voter Guides that follow a similar format,

12  and it is appropriate for the Court to declare its view on this issue.

13      47.   Based on the foregoing, this Court should declare that, to the extent Section

14  84305.7(c) applies to Plaintiffs' Public Safety Newsletter and Voter Guide (Exhibit 2)

15  and to Plaintiffs' future Public Safety Newsletter and Voter Guides that follow a similar

16  format, the statutory subsection is unconstitutional as applied to Plaintiffs.

17              **THIRD CAUSE OF ACTION**

18           **INJUNCTIVE RELIEF TO PREVENT
         VIOLATIONS OF THE FIRST AMENDMENT TO**

19      **THE UNITED STATES CONSTITUTION (42 U.S.C. § 1983)**
              **(Against all Defendants)**

20

21      48.   Plaintiffs hereby reallege and incorporate by reference the allegations

    contained in paragraphs 1 through 37 as if fully set forth herein.

22

23      49.   The provisions of Section 84305.7(c) that require certain slate mailer

    organizations to publish the number of members of such organizations on certain slate

24

25  mailers and mass mailings violate Plaintiffs' First Amendment rights to free speech and

    association because the provisions are unconstitutionally vague, overbroad, burden speech

26

27  without being appropriately tailored to the government's stated goals, and require the

    compelled disclosure of membership information.

28

50.   The provisions of Section 84305.7(c) that require certain slate mailer organizations to publish the number of members of such organizations on certain slate mailers and mass mailings violate the First Amendment because they apply to some organizations but not others without sufficient justification.

51.   Upon information and belief, Defendants, acting under color of state law, will enforce the challenged law against Plaintiffs, in violation of their First Amendment rights.

52.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered and will suffer irreparable harm, which necessitates and justifies injunctive relief.

53.   Based on the foregoing, this Court should issue an injunction to prevent Defendants from enforcing Section 84305.7(c) on the grounds that it violates the First Amendment to the United States Constitution.

## FOURTH CAUSE OF ACTION

**INJUNCTIVE RELIEF TO PREVENT VIOLATIONS OF DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (42 U.S.C. § 1983)**
**(Against all Defendants)**

54.   Plaintiffs hereby reallege and incorporate by reference the allegations contained in paragraphs 1 through 37 as if fully set forth herein.

55.   The Section 84305.7(c) language identifying which organizations must disclose certain information and under what circumstances is impermissibly vague in that persons of common intelligence could easily reach different conclusions.  This problem manifests itself unfairly because an entity which reads the provisions too narrowly is subject to criminal prosecution and punishment, and an entity that reads them too broadly suffers a greater infringement of First Amendment rights than the statute requires. This statute therefore violates due process.

56.   Plaintiffs believe that Defendants, acting under color of state law, will enforce the challenged law against Plaintiffs, in violation of their due process rights.

FIRST AMENDED COMPLAINT

57.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered and will suffer irreparable harm, which necessitates and justifies injunctive relief.

58.   Based on the foregoing, this Court should issue an injunction to prevent Defendants from enforcing Section 84305.7(c) on the grounds that it violates Plaintiffs' and others' due process rights under the Fourteenth Amendment to the United States Constitution.

## FIFTH CAUSE OF ACTION

### INJUNCTIVE RELIEF TO PREVENT VIOLATIONS OF EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (42 U.S.C. § 1983)
### (Against all Defendants)

59.   Plaintiffs hereby reallege and incorporate by reference the allegations contained in paragraphs 1 through 37 as if fully set forth herein.

60.   The provisions of Section 84305.7(c) that require certain organizations to provide the number of members of such organizations on certain slate mailers and mass mailings violate the Fourteenth Amendment because they apply to some organizations, but not others, without sufficient justification.

61.   Plaintiffs believe that Defendants, acting under color of state law, will enforce the challenged law against Plaintiffs, in violation of their equal protection rights.

62.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered and will suffer irreparable harm, which necessitates and justifies injunctive relief.

63.   Based on the foregoing, this Court should issue an injunction to prevent Defendants from enforcing Section 84305.7(c) on the grounds that it violates Plaintiffs' and others' equal protection rights under the Fourteenth Amendment to the United States Constitution.

FIRST AMENDED COMPLAINT

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek the following relief:

1.     A declaration that Government Code section 84305.7(c) does not apply to Plaintiffs' Public Safety Newsletter and Voter Guide (Exhibit 2) and to Plaintiffs' future Public Safety Newsletter and Voter Guides that follow a similar format;

2.     A declaration that, to the extent Government Code section 84305.7(c) applies to Plaintiffs' Public Safety Newsletter and Voter Guide (Exhibit 2) and to Plaintiffs' future Public Safety Newsletter and Voter Guides that follow a similar format, it is unconstitutional as applied to Plaintiffs and/or on its face;

3.     A preliminary injunction prohibiting Defendants, their agents, representatives, employees, and all persons acting pursuant to their direction and control, from taking any steps to enforce Government Code section 84305.7(c) against Plaintiffs or others on the grounds that it violates Plaintiffs' First Amendment rights;

4.     A preliminary injunction prohibiting Defendants, their agents, representatives, employees, and all persons acting pursuant to their direction and control, from taking any steps to enforce Government Code section 84305.7(c) against Plaintiffs or others on the grounds that it violates Plaintiffs' Fourteenth Amendment due process rights;

5.     A preliminary injunction prohibiting Defendants, their agents, representatives, employees, and all persons acting pursuant to their direction and control, from taking any steps to enforce Government Code section 84305.7(c) against Plaintiffs or others on the grounds that it violates Plaintiffs' Fourteenth Amendment equal protection rights;

6.     Costs and attorney's fees incurred in this action pursuant to 42 U.S.C. section 1988 and other applicable authority; and

1    7.    Such other and further relief as the Court deems just and equitable.

2

3    Dated: June 6, 2013                    Respectfully Submitted:

4

5                                    By:
                                         Bradley W. Hertz
6                                        The Sutton Law Firm, PC
                                         Attorneys for Plaintiffs LANDSLIDE
7                                        COMMUNICATIONS, INC. and JAMES V.
                                         LACY, IN HIS CAPACITY OF PRESIDENT
8                                        OF LANDSLIDE COMMUNICATIONS, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    18                  FIRST AMENDED COMPLAINT

# EXHIBIT 1

CALIFORNIA GOVERNMENT CODE

**§ 84305.7. Slate Mailer Requirements; Use of Logos or "Public Safety" Names.**

(a) If a slate mailer organization sends a slate mailer or other mass mailing that displays a logo, insignia, emblem, or trademark that is identical or substantially similar to the logo, insignia, emblem, or trademark of a governmental agency, and that would reasonably be understood to imply the participation or endorsement of that governmental agency, the slate mailer organization shall obtain the express written consent of the governmental agency associated with the logo, insignia, emblem, or trademark prior to using the logo, insignia, emblem, or trademark in the slate mailer or other mass mailing.

(b) If a slate mailer organization sends a slate mailer or other mass mailing that displays a logo, insignia, emblem, or trademark that is identical or substantially similar to the logo, insignia, emblem, or trademark of a nongovernmental organization that represents law enforcement, firefighting, emergency medical, or other public safety personnel, and that would reasonably be understood to imply the participation or endorsement of that nongovernmental organization, the slate mailer organization shall obtain the express written consent of the nongovernmental organization associated with the logo, insignia, emblem, or trademark prior to using the logo, insignia, emblem, or trademark in the slate mailer or other mass mailing.

(c) If a slate mailer organization sends a slate mailer or other mass mailing that identifies itself or its source material as representing a nongovernmental organization with a name that includes the term "peace officer," "reserve officer," "deputy," "deputy sheriff," "sheriff," "police," "highway patrol," "California Highway Patrol," "law enforcement," "firefighter," "fire marshal," "paramedic," "emergency medical technician," "public safety," or any other term that would reasonably be understood to imply that the organization is composed of, or affiliated with, law enforcement, firefighting, emergency medical, or other public safety personnel, the slate mailer or mass mailing shall disclose on the outside of each piece of mail and on at least one of the inserts included with each piece of mail in no less than 12-point roman type, which shall be in a color or print that contrasts with the background so as to be easily legible, the total number of members in the organization identified in the slate mailer or mass mailing.

History: Added by Stats. 2012, Ch. 865.

# EXHIBIT 2



ADVERTISEMENT

# California Public Safety

## NEWSLETTER AND VOTER GUIDE

Policy Issues Institute • 5405 Alton Pkwy, Ste. 5A • Irvine, CA 92604
California Public Safety Voter Guide is a Special Project of the Policy Issues Institute

PAGE 1

**Elizabeth Emken**
U.S. Senate

No on Prop. 29
29 is FLAWED
$735 million tax.

**Superior Court Judge, Ofc 24**
**David Berry***
Law enforcement's choice.
Endorsed by District Attorney,
Deputy Sheriffs, local police
officers, Mayor Jerry Sanders.

**Superior Court Judge, Ofc 25**
**Jim Miller***
Endorsed by the Republican
Party, Lincoln Club, Senators
Anderson and Wyland,
Firefighters and Police Officers.

**Superior Court Judge, Ofc 34**
**Gary Kreep***
No deals with criminal
predators. Heard over 1,000
cases as Judge Pro-Tem. Family
Law Settlement Judge. UCSD
and USD Law school graduate.
One special interest: YOU

**San Diego Mayor**
**Nathan Fletcher**
Nathan authored Chelsea's Law
and showed true leadership in
forging a bipartisan solution to
punishing violent sexual
predators .

**City of San Diego**
**Yes on Proposition B***
Stops Pension Spiking. Nearly
$1 Billion in savings means
more funding for street repairs
& reinstating library hours.

**Republican Cmte, Dist 78**
Thomas Webb
Jesse Gipe
Jean Roesch
John "Woody" Woodrum
Richard Bailey
Julio DeGuzman Jr.

REVIEW

NONPROFIT
U.S. POSTAGE
PAID
PII

REQUIRED BY LAW – NOTICE TO VOTERS: THIS DOCUMENT WAS PREPARED BY California Public Safety Voter Guide, NOT AN OFFICIAL POLITICAL PARTY ORGANIZATION. Appearance in this mailer
does not necessarily imply endorsement of, or opposition to, any issues set forth in this mailer. Appearance is paid for and authorized by each candidate and ballot measure which is designated by an *.

Published Irregularly by California Public Safety Voter Guide • 5405 Alton Pkwy. Ste. 5A, Irvine, CA 92604



# California Public Safety Newsletter and Voter Guide

JUNE 5, 2012 • VOLUME 2 • NUMBER 1

PAGE 2

ADVERTISEMENT

# Emergency Medical Services Training: Assembly Bill 1245

### By James V. Lacy

One of the most important things I learned as a member of the Orange County Fire Authority Board of Directors was the life-saving importance of competent emergency medical services provided to the injured by our emergency response professionals. That is why I think it is so important for legislators to get behind professional firefighters' efforts to pass Assembly Bill 1245 (Das Williams, Santa Barbara), which authorizes a higher standard of emergency medical service training regulations by allowing the California Emergency Medical Services Authority to create standards authorizing emergency responder training, consistent with the rules that have been promulgated by the



U.S. Department of Transportation. You can help support and improve emergency services by contacting your State Senator and Assembly member and asking them to vote for AB 1245. The life that is saved may be your own!

James V. Lacy served as a member of the Orange County Fire Authority from 2002-2006.



# Elizabeth Emken* U.S. SENATE

- Stop runaway spending
- REPEAL Obamacare
- Cut taxes and fees
- YES to new U.S. oil drilling

OFFICIALLY ENDORSED by the California Republican Party

Emken is the **Conservative Choice!**   www.Emken2012.com

# No on Proposition 29*

Prop. 29 is seriously flawed: $735 million in new taxes. **Funds can be spent out of state, instead of creating jobs here in California.** No new funds for cancer treatment. New bureaucracy. Political appointees can spend $125 million annually on real estate, salaries and overhead. Cancer research is important, but 29 has no strict controls or accountability to ensure funds are spent wisely. NO on 29!

# No on Proposition 28*

Prop. 28 is a SCAM! Legislators will DOUBLE their terms from six to twelve years!



# EXHIBIT 3

BILL ANALYSIS

SB 488
Page  1

Date of Hearing:  July 5, 2011

ASSEMBLY COMMITTEE ON ELECTIONS AND REDISTRICTING
Paul Fong, Chair
SB 488 (Correa) - As Introduced:  February 17, 2011

SENATE VOTE  :  28-7

SUBJECT  :  Political Reform Act of 1974: slate mailers.

SUMMARY  :  Requires a slate mailer that represents the position
of a public safety organization to include specified information
about the organization's membership.  Prohibits the use of a
logo of a governmental organization or of specified
non-governmental organizations in a slate mailer without the
written consent of the organization.  Specifically, this bill  :

1) Requires a slate mailer organization to obtain express written
   consent from a governmental agency prior to using the logo,
   insignia, emblem, or trademark of the agency, or a
   substantially similar logo, insignia, emblem, or trademark, in
   a slate mailer or other mass mailing, if the use of the item
   would reasonably be understood to imply the participation or
   endorsement of that agency.

2) Requires a slate mailer organization to obtain express written
   consent from a nongovernmental organization that represents
   law enforcement, firefighting, emergency medical, or other
   public safety personnel, prior to using the logo, insignia,
   emblem, or trademark of the organization, or a substantially
   similar logo, insignia, emblem, or trademark, in a slate
   mailer or other mass mailing, if the use of the item would
   reasonably be understood to imply the participation or
   endorsement of that organization.

3) Requires a slate mailer organization that sends a slate mailer
   or other mass mailing that identifies itself or its source
   material as representing a nongovernmental organization with a
   name that includes the term "officer," "peace officer,"
   "reserve officer," "deputy," "deputy sheriff," "police,"
   "highway patrol," "California Highway Patrol," "law
   enforcement," "firefighter," "fire marshal," "paramedic,"
   "emergency medical technician," "public safety," or any other
   term that would reasonably be understood to imply that the

SB 488
Page  2

organization is composed of, or affiliated with, law
enforcement, firefighting, emergency medical, or other public
safety personnel, to disclose the total number of members in
the organization identified and the number of members working
or living within the county in which the slate mailer or mass
mailing is being delivered.  Requires this disclosure to be
included on the outside of each piece of mail and on at least
one of the inserts included with each piece of mail in no less
than 12-point roman type, which shall be in a color or print
that contrasts with the background so as to be easily legible.

4) Makes various findings and declarations.

EXISTING LAW  :

1) Defines a "slate mailer" as a mass mailing that supports or
   opposes a total of four or more candidates or ballot measures.

2) Defines a "slate mailer organization" as a person who is
   involved in the production of one or more slate mailers,
   exercises control over the selection of the candidates and
   measures to be supported or opposed in the slate mailers, and
   receives or is promised payments totaling $500 or more in a
   calendar year for the production of one or more slate mailers.
   Provides that none of the following are slate mailer
   organizations:

   a)  A candidate or officeholder or the controlled committee

of a candidate or officeholder;

b)   An official committee of any political party;

c)   A legislative caucus committee; or,

d)   A committee primarily formed to support or oppose a
     candidate, officeholder, or ballot measure.

3) Prohibits a slate mailer organization or a committee primarily
   formed to support or oppose one or more ballot measures from
   sending a slate mailer unless it contains all of the
   following:

   a)   The name, street address, and city of the slate mailer
        organization or committee on the outside of each piece of
        slate mail and on at least one of the inserts included with

                                                    SB 488
                                                    Page  3

   each piece of slate mail in no less than 8-point type;

   b)   A notice, in no less than 8-point type, that consists of
        the following statement:

        ----------------------------------------------------------
        |                    NOTICE TO VOTERS                     |
        |THIS DOCUMENT WAS PREPARED BY (name of slate mailer      |
        |organization or committee primarily formed to support   |
        |or oppose one or more ballot measures), NOT AN OFFICIAL  |
        |POLITICAL PARTY ORGANIZATION.  Appearance in this        |
        |mailer does not necessarily imply endorsement of, or     |
        |opposition to, any issues set forth in this mailer.      |
        |Appearance is paid for and authorized by each candidate  |
        |and ballot measure which is designated by an *.          |
        ----------------------------------------------------------

   c)   An asterisk (*) to designate each candidate and each
        ballot measure that has paid to appear in the slate mailer
        in the same type size, style, color, and legibility as is
        used for the name of the candidate or the ballot measure
        name or number and position advocated.

   d)   The political party affiliation of a candidate appearing
        in the slate mailer, in no less than 9-point type, if the
        candidate is not running for non-partisan office and is a
        member of a political party differing from the political
        party with which the mailer appears by representation or
        indicia to represent.

4) Makes it a misdemeanor for a person to do any of the
   following:

   a)   To use the Great Seal of the State of California in any
        campaign literature or mass mailing with intent to deceive
        the voters;

   b)   To use the seal of a city in any campaign literature or
        mass mailing with intent to deceive the voters;

   c)   To use the seal of the California Supreme Court, an
        appellate court, or a superior court in any campaign
        literature or mass mailing with intent to deceive the
        voters;

                                                    SB 488
                                                    Page  4

   d)   To use the seal of a county, school district, special or
        other district, or any board, commission, or agency of a
        local jurisdiction in any campaign literature or mass
        mailing with intent to deceive the voters; or,

   e)   To use the official seal or insignia of any public

entity on a simulated ballot or simulated sample ballot, or
on the envelope in which the simulated ballot or simulated
sample ballot is mailed or otherwise delivered.

5) Creates the Fair Political Practices Commission (FPPC), and
makes it responsible for the impartial, effective
administration and implementation of the Political Reform Act
(PRA).

6) Provides that a violation of the PRA is punishable by
criminal, civil, or administrative penalties.

 FISCAL EFFECT  :   According to the Senate Appropriations
Committee, pursuant to Senate Rule 28.8, negligible state costs.
State-mandated local program; contains a crimes and infractions
disclaimer.

COMMENTS  :

 1) Purpose of the Bill  :  According to the author:

Existing law requires most slate mailers to disclose
three things:

Who sent it.
Who paid to appear on it.
And a statement that it doesn't reflect
official party positions.

However, slate mailers can claim to represent just
about any group or cause under the sun. SB 488 is an
attempt to shed some light on slate mailers that claim
to represent law enforcement, firefighting, and other
public safety personnel.

This bill would require slate mail organizations to
obtain prior consent before using a logo or other
emblem that is identical or substantially similar to

                                              SB 488
                                              Page  5

one used by a government agency or other organization
that represents any of these public safety groups.

This bill would also require that a slate mailer
purporting to represent one of these groups disclose
the total number of members in their organization and
the number of members working or living within the
county where the slate mailer is sent.

Unauthorized use of these logos in slate mailers can
mislead the public as they attempt to distinguish
between legitimate public safety communications and
political advertisements.

This bill is not groundbreaking-the law already
requires numerous disclosure statements on not only
slate mailers but virtually every other type of
campaign communication-including mass mail, newspaper,
radio and television advertisements.

 1) Constitutional Issues  :  This measure could be interpreted as a
violation of the United States and California Constitutions'
rights to free speech.  While the right to freedom of speech
is not absolute, when a law burdens core political speech, the
restrictions on speech generally must be "narrowly tailored to
serve an overriding state interest,"  McIntyre v. Ohio
Elections Commission  (1995), 514 US 334.  The United States
Supreme Court has been particularly wary of laws that compel
political speech.  In  McIntyre  , the United States Supreme
Court found that an Ohio law that prohibited the distribution
of anonymous campaign literature was unconstitutional.

In fact, a federal district court cited  McIntyre  in two separate
cases that raised questions about the constitutionality of
California laws that required certain information to be
included on slate mailers.

In November 1996, California voters approved Proposition 208,
which made various significant changes to the PRA.  Many of
those changes were subsequently repealed or amended through
the passage of Proposition 34, which was placed on the
November 2000 ballot by SB 1223 (Burton), Chapter 102,

Statutes of 2000. Among the provisions of Proposition 208
that were not affected by Proposition 34, however, were
provisions that required certain information and specified

SB 488
Page 6

disclaimers to be included on slate mailers. Among those
provisions was a requirement that slate mailers identify any
candidate or ballot measure that had paid to be included in
the slate mailer with three dollar signs ($$$), instead of
with an asterisk (*), a requirement that certain information
and disclaimers be included on every page of a slate mailer
instead of appearing at least once on the slate mailer, and a
requirement that slate mailers identify contributors who gave
more than $50,000 to ballot measures.

In California Prolife Council PAC v. Scully (2001), No. Civ.
S-96-1965, the United States District Court for the Eastern
District of California found that those provisions were
unconstitutional, and the Court permanently enjoined them from
enforcement. In its decision, the Court found the slate
mailer requirements to be "intrusive and extensive" compelled
speech that could not be justified by the state's interests in
informing voters, avoiding deception, and addressing the
potential for corruption.

Similarly, in Levine v. Fair Political Practices Commission
(2002), 222 F. Supp. 2d 1182, the same District Court issued a
preliminary injunction against two state laws governing the
content of slate mailers. Those laws required any slate
mailer that appeared to represent a political party to include
a disclaimer whenever a candidate or position on a ballot
measure endorsed in the slate mailer was different from the
official endorsement of that political party. In issuing the
preliminary injunction, the court concluded that "forc[ing]
slate mailer publishers to give space to [an] opposing view"
was an overly broad way for the state to attempt to protect
voters from confusion and fraud. Subsequent to the issuance
of the preliminary injunction, the parties in Levine reached a
settlement, and the Legislature and the Governor modified the
slate mailer disclaimer requirements through the passage of SB
604 (Perata), Chapter 478, Statutes of 2004.

In light of these decisions, the provisions of this bill may be
susceptible to challenge on the grounds that the bill's
requirements impermissibly burden the First Amendment rights
of slate mailer organizations and of those candidates and
other individuals who use slate mailers to communicate with
voters. In particular, provisions of this bill that require
certain slate mailers to include a disclosure of the number of
members of the organization sending the mailer on the mailer

SB 488
Page 7

itself, including the number of members living or working in
the county in which the mailer is delivered, could be viewed
as compelled political speech that must be narrowly tailored
to serve an overriding state interest.

2) Public Safety Organizations Only : Provisions of this bill
that require a slate mailer organization to obtain written
consent prior to using the logo of a private organization and
that require a slate mailer to include the number of members
of the organization sending the slate mailer apply only when
the slate mailer organization is using the logo of, or
purports to represent, public safety organizations. Nothing
in this bill would protect private organizations that are not
public safety organizations from the misuse of their logos in
campaign mailers, nor would this bill require membership
figures to be disclosed on slate mailers purporting to
represent organizations that are not public safety
organizations. The findings and declarations of this bill
maintain that it is essential for the public to be able to
distinguish between legitimate public safety communications
and political messages, and contend that voters may disregard

important public safety information if the logos of these public safety organizations are not protected against improper use.

3)Existing Protections : As noted above, existing law already makes it a crime to use an official seal or insignia of a state or local government agency in campaign literature or in a mass mailing with the intent to deceive the voters.  In light of these laws, the need to further require a slate mailer organization to obtain written permission from an agency prior to using its logo in a mailer is unclear.  While state law does not include similar criminal penalties for the use of the seal or insignia of a private organization in campaign literature with the intent to deceive voters, those private organizations may nonetheless have recourse for the unauthorized use of a logo in a campaign mailing under state or federal trademark laws.

4)Arguments in Support : In support of this bill, the Association for Los Angeles Deputy Sheriffs, the Los Angeles Probation Officers' Union, the Orange County Professional Firefighters Association, and the Riverside Sheriffs' Association, write:

SB 488
Page 8

There is public trust given safety organizations on a daily basis.  If that trust is broken because of political deception, it might not return. Unauthorized use of logos, insignias, emblems, or trademarks identified with public safety departments, organizations, and professionals also puts a chasm between legitimate communication and political propaganda.  If law enforcement, for example, must issue an emergency warning to the public, there will be potential for citizen disregard of the information because it is assumed the message is associated with a political campaign or candidate that is not to be trusted.

5)Arguments in Opposition : The American Association of Political Consultants (AAPC), in opposition to this bill, writes:

The AAPC feels strongly that SB 488, as it is currently written, would have a chilling effect on the first amendment's right to freedom of speech and is therefore unconstitutional. Further, recourse for unauthorized use of trademarked logos is already available in existing laws: California Business and Professions Code Division 6. Business Rights: Chapter 2 Model State Trademark Law Sec. 14200-14272 and should not be a part of this legislation.

Recently, the Legislative Committee of the AAPC worked with the California Fair Political Practices Commission (FPPC) Chairman's Advisory Task Force to enhance regulations for slate mailers. These new reforms are now in place as a result of the work of the Task Force. AAPC believes that proposed changes to the Political Reform Act of 1974 such as SB 488, would best be addressed through a similar process, prior to legislation being introduced.

6)Previous Legislation : AB 374 (Matthews) of 2001, would have required slate mailers that represented the position of a peace officer or firefighter organization to disclose certain information on the organization's membership. AB 374 was approved by this committee and by the Assembly, but subsequently was amended for an unrelated purpose.

SB 488
Page 9

7) Political Reform Act of 1974  :  California voters passed an
initiative, Proposition 9, in 1974, that created the FPPC and
codified significant restrictions and prohibitions on
candidates, officeholders and lobbyists. That initiative is
commonly known as the PRA.  Amendments to the PRA that are not
submitted to the voters, such as those contained in this bill,
must further the purposes of the initiative and require a
two-thirds vote of both houses of the Legislature.

REGISTERED SUPPORT / OPPOSITION  :

Support

California Professional Firefighters (Sponsor)
Association for Los Angeles Deputy Sheriffs
California Clean Money Campaign
California Common Cause
Los Angeles County Probation Officers' Union
Los Angeles Police Protective League
Orange County Professional Firefighters Association
Riverside Sheriffs' Association

Opposition

American Association of Political Consultants

Analysis Prepared by  :   Ethan Jones / E. & R. / (916) 319-2094

1

**PROOF OF SERVICE**

2      1.      I am employed in the City and County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action. My business address for

3      this matter is 150 Post Street, Suite 405, San Francisco, CA 94108.

4      2.      On June 6, 2013, I served the foregoing document described as Plaintiff's "First Amended Complaint for Declaratory and Injunctive Relief" on the following parties to this

5      action, as follows:

6

| Benjamin Glickman, Esq. Deputy Attorney General Office of the Attorney General P.O. Box 944255 Sacramento, CA 94244 Tel: 916/323-7355 Fax: 916/324-5502 Emai: Benjamin.Glickman@doj.ca.gov | Attorneys for Defendants STATE OF CALIFORNIA; KAMALA HARRIS, in her capacity as Attorney General of California; CALIFORNIA FAIR POLITICAL PRACTICES COMMISSION; ANN RAVEL, in her capacity as Chair of the Fair Political Practices Commission |
|---|---|

7

8

9

10

11

12

13      _____ (VIA PERSONAL DELIVERY) I delivered such document via personal delivery to the persons listed above at the addresses listed above, which they provided to me and which I have

14      used to successfully communicate with them in the past.

15      _____ (VIA E-MAIL) I served such document via e-mail to the persons listed above at the e-mail addresses listed above, which they provided to me and which I have used to successfully

16      communicate with them in the past.

17      _____ (VIA OVERNIGHT MAIL) By enclosing the document(s) in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses listed

18      above. I placed the envelope or package for collection and overnight delivery at an office or a

19      regularly utilized drop box of the overnight delivery carrier.

20      __X__ (VIA U.S. MAIL) I mailed a copy of the document(s) as follows: I am a resident of or employed in the county where the mailing occurred. I enclosed a copy in an envelope and

21      deposited the sealed envelope with the United States Postal Service, with the postage fully

22      prepaid.

23      Executed on June 6, 2013 at Los Angeles, California.

(State) I declare under penalty of perjury under the laws of the United States of America that the

24      foregoing is true and correct.

25      Bradley W. Hertz

26

27

28

1