1    KAMALA D. HARRIS, State Bar No. 146672
     Attorney General of California
2    MARK R. BECKINGTON, State Bar No. 126009
     Supervising Deputy Attorney General
3    BENJAMIN M. GLICKMAN, State Bar No. 247907
     Deputy Attorney General
4      1300 I Street, Suite 125
     P.O. Box 944255
5      Sacramento, CA 94244-2550
     Telephone: (916) 323-7355
6      Fax: (916) 324-8835
     E-mail: Benjamin.Glickman@doj.ca.gov
7
   *Attorneys for Defendants*
8

9              IN THE UNITED STATES DISTRICT COURT

10            FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12

| | |
|---|---|
| 13   **LANDSLIDE COMMUNICATIONS, INC.** | 2:13-cv-00716-GEB-KJN |
| 14   **and JAMES V. LACY, IN HIS CAPACITY AS PRESIDENT OF LANDSLIDE** | |
| 15   **COMMUNICATIONS, INC.,** | **DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| 16                 Plaintiffs, | **[L.R. 260(a)]** |
| 17      v. | Date:         November 4, 2013 |
| 18 | Time:         9:00 a.m. |
|    **STATE OF CALIFORNIA; KAMALA** | Dept:         10 |
| 19   **HARRIS, in her capacity as Attorney** | Judge:       Hon. Garland E. Burrell, Jr. |
|    **General of California; CALIFORNIA FAIR** | Action Filed: 4/11/2013 |
| 20   **POLITICAL PRACTICES COMMISSION; ANN RAVEL, in her capacity as Chair of** | |
| 21   **the Fair Political Practices Commission,** | |
| 22                 Defendants.** | |

23

24

25

26

27

28

Pursuant to Local Rule 260(a), Defendants State of California, Kamala Harris, in her official capacity as Attorney General of the State of California, the Fair Political Practices Commission, and Ann Ravel, in her official capacity as Chair of the Fair Political Practices Commission, submit the following Statement of Undisputed Facts in support of their Motion for Summary Judgment.

1.     In 1974, California voters overwhelmingly passed Proposition 9, which resulted in the creation of California's Political Reform Act (the "Act") and a new, independent agency—the Fair Political Practices Commission ("FPPC")—to administer, interpret and enforce its provisions. (Cal. Gov't Code §§ 83100 et seq.; *id.* § 84601(a); Declaration of Gary Winuk ("Winuk Decl."), ¶ 2.)

2.     The FPPC is the state administrative agency responsible for the administration of the Act.  (Cal. Gov't Code. §§ 83100; 83111; Winuk Decl., ¶ 3.)

3.     The FPPC is charged with investigating possible violations of the Act and bringing enforcement proceedings when it determines there is probable cause to believe the Act has been violated.  (Cal. Gov't Code. §§ 83115–83116; Winuk Decl., ¶ 3.)

4.     The FPPC is also required to issue opinions or advice letters to any person requesting advice about such person's obligations under the Act.  (Cal. Gov't Code § 83114.) Actions taken in good faith reliance on FPPC formal advice or opinion are not subject to enforcement action by the FPPC.  (*Id.*)  If advice is requested but not timely given, the FPPC is barred from taking enforcement action against the requester regarding the subject matter of the request.  (Cal. Gov't Code. § 83114(b); Winuk Decl., ¶ 4.)

5.     The Act includes various disclosure and disclaimer requirements designed to increase transparency in California election campaigns.  These requirements (and the FPPC's enforcement of them) are intended to promote the State of California's interests in an informed electorate and preserving the integrity of its elections by minimizing deception and voter confusion in election campaigns.  (Cal. Gov't Code §§ 84100 *et seq.*; Winuk Decl., ¶ 5.)

6.     In the nearly 40 years since the Act's original enactment, "slate mail" has become an increasingly common means of political communication prior to an election.  (Winuk Decl.,

1

¶ 6; Declaration of Joel Tochterman ("Tochterman Decl."), Ex. A, pp. 9–12, 22–23, 31–41.)

7.      As slate mail became more prevalent, the FPPC and California Legislature received numerous complaints about deceptive practices of certain slate mailer organizations. In 1982, the FPPC issued a Report and Recommendation regarding slate mailers, and in 1986 and 1987, the FPPC conducted public hearings about slate mailers.  (Winuk Decl., ¶ 7; Tochterman Decl., Ex. A, pp. 24–30, 31–41.)

8.      By 1986, the FPPC had identified numerous recurring complaints about the deceptive practices of certain slate mailer organizations, including that: (1) slate mailers may be designed to appear to contain political party endorsements when in fact the mailer has no official party sanction; (2) the various candidates and issues placed on a slate mailer appear to be endorsing one another, although they may have been placed on the slate mailer without consultation or consent; (3) the fact that candidates or ballot measure committees have paid to be included in a slate mailer is not clear to the voters who receive the slate mailer; and (4) slate mailers may be designed to hide the identity of the sender or to disguise the fact that some candidates or measures paid to be included on the mailer while others were included free of charge.  (Winuk Decl., ¶ 7; Tochterman Decl., Ex. A. pp. 11–12, 16, 20, 25, 31–41.)

9.      In response to concerns and complaints regarding the deceptive practices of certain professional slate mailer organizations, the California Legislature has enacted various laws amending the Act to impose certain disclosure and reporting requirements on "slate mailer organizations" and "slate mailers."  (Winuk Decl., ¶ 8; Tochterman Decl., Ex. A.)

10.     Most recently, in 2012, the Legislature enacted Senate Bill 488 ("SB 488") to address complaints and concerns over the deceptive practices of certain slate mailer organizations that distribute slate mailers purporting to represent governmental agencies and non-governmental public safety organizations.  (Winuk Decl., ¶ 9, Exs. A–B.)

11.     There is a public trust given public safety organizations on a daily basis.  If that trust is broken because of a political deception it might not return.  The deceptive practices of certain slate mailer organizations creates a risk that citizens will disregard important public safety

2

information because it is assumed the message is associated with a political campaign or candidate. (Winuk Decl., Ex. A, pp. 14–22.)

12.     The Legislature's express findings and declarations in support of SB 488 reiterate the recurring complaints about, and the State of California's concerns regarding, certain public safety-related slate mailers.  (SB 488, § 1; Winuk Decl., Ex. A, p. 2.)

13.     By limiting the deceptive practices of certain slate mailer organizations, SB 488 is intended to promote the State of California's interests in ensuring an informed electorate, preserving the integrity of California's elections, and promoting public safety.  SB 488 is codified in California Government Code section 84305.7.  (SB 488, § 1; Winuk Decl., ¶ 9, Exs. A–B.)

14.     California's anti-fraud election statutes are generally insufficient to correct or prevent deceptive slate mailers *before* an election.  Because slate mailers are typically distributed on the eve of an election, it is unlikely (if not impossible) that any enforcement action can be taken before an election, and post- election investigation and enforcement of slate mailer abuses cannot remedy a voter's confusion prior to the election or alter election results.  (Winuk Decl., ¶ 10.)

15.     Plaintiff Landslide Communications, Inc.'s website promotes the California Public Safety Voter Guide as follows:

> "Firefighters, police and emergency workers enjoy a high approval rating, especially firefighters (85% +) across the board among members of all political parties. Our California Public Safety Voter Guide will seamlessly mail to largely Republican households in the primary and will build to 2 million high propensity voter households statewide (Republican, Democrat, and Decline to State) in the general election. Our California Public Safety Voter Guide will honor the work of these public safety workers and include safety content from a public safety worker."

(Declaration of James V. Lacy in Support of Plaintiffs' Motion for Summary Judgment, ¶ 8, Ex. B (Document 25-2, pp. 4, 21).)

16.     The State of California has a compelling interest in ensuring an informed

3

electorate.  (*See, e.g.*, *Family PAC v. McKenna*, 685 F.3d 800, 809 (9th Cir. 2012); Tochterman Decl., Ex. A, pp. 11–12; Winuk Decl., Ex. A, pp. 1, 6–11, 13, Ex. B.)

17.   The State of California has a compelling interest in preserving the integrity of its elections.  (*See, e.g.*, *John Doe No. 1 v. Reed*, 130 S. Ct. 2811, 2819 (2010); Tochterman Decl., Ex. A, pp. 11–12; Winuk Decl., Ex. A, pp. 1, 6–11, 13, Ex. B.)

18.   The State of California has a compelling interest in promoting public safety and preserving the integrity of its public safety agencies.  (*See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 750, 754–55 (1987); Winuk Decl., Ex. A, pp. 1, 6–9, 12, 14–22, Ex. B.)


Dated:  September 19, 2013                    Respectfully Submitted,

                                             KAMALA D. HARRIS
                                             Attorney General of California
                                             MARK R. BECKINGTON
                                             Supervising Deputy Attorney General



                                                 /s/ Benjamin M. Glickman
                                             BENJAMIN M. GLICKMAN
                                             Deputy Attorney General

                                             *Attorneys for Defendants*



SA2013111001
11172451.doc

4