UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANDSLIDE COMMUNICATIONS, INC. and JAMES V. LACY, in his capacity as President of LANDSLIDE COMMUNICATIONS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF CALIFORNIA; KAMALA HARRIS, in her capacity as Attorney General of California; CALIFORNIA FAIR POLITICAL PRACTICES COMMISSION; ANN RAVEL, in her capacity as Chair of the Fair Political Practices Commission, <br><br> Defendants. | No. 2:13-cv-00716-GEB-KJN <br><br> **ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT** |

Pending are cross-motions for summary judgment on all claims in Plaintiffs' First Amended Complaint ("FAC"). Plaintiffs challenge a recently-enacted California statute prescribed in California Government Code section 84305.7(c), which governs certain election mail. Plaintiffs' FAC comprises the following claims: declaratory relief that the statute does not apply to Plaintiffs' California Public Safety Newsletter and Voter Guide publication (hereinafter referred to as "mailing" or by full title), and that if it applies, it is unconstitutional as

1

applied; and injunctive relief under 42 U.S.C. § 1983 preventing violations of Plaintiffs' rights under the First Amendment Free Speech and Association Clauses, the Fourteenth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection Clause.

Oral argument was heard on November 11, 2013. For the reasons stated below, Defendants' motion is GRANTED, and Plaintiffs' motion is DENIED.

## I. LEGAL STANDARD

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case." Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue of material fact is "genuine" when "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting Anderson, 477 U.S. at 248). To meet this burden, the movant must "inform[] the district court of the basis for its motion, and identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323 (internal quotation marks omitted).

If the movant satisfies its "initial burden," "the nonmoving party must set forth, by affidavit or as otherwise

provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting former Fed. R. Civ. P. 56(e)); see also Fed. R. Civ. P. 56(c)(1). The nonmoving party "cannot 'rest upon the mere allegations or denials of the adverse party's pleading' but must instead produce evidence that 'set[s] forth specific facts showing that there is a genuine issue for trial.'" Tucker ex rel. Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Anderson, 477 U.S. at 248).

Further, Local Rule 260(b) prescribes:

> Any party opposing a motion for summary judgment or summary adjudication [must] reproduce the itemized facts in the [moving party's] Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial.

If the nonmovant does not "specifically . . . [controvert duly supported] facts identified in the [movant's] statement of undisputed facts," the nonmovant "is deemed to have admitted the validity of the facts contained in the [movant's] statement." Beard v. Banks, 548 U.S. 521, 527 (2006) (finding that a party opposing summary judgment who "fail[s] [to] specifically challenge the facts identified in the [moving party's] statement of undisputed facts . . . is deemed to have admitted the validity of [those] facts"). "Because a district court has no independent duty 'to scour the record in search of a genuine issue of triable fact,' and may 'rely on the nonmoving party to identify with

3

reasonable particularity the evidence that precludes summary judgment,' . . . the district court . . . [is] under no obligation to undertake a cumbersome review of the record on the [nonmoving party's] behalf." Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010) (quoting Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996)).

When deciding cross-motions for summary judgment, each motion is evaluated on its own merits, "giving the nonmoving party in each instance the benefit of all reasonable inferences." ACLU v. City of Las Vegas, 466 F.3d 784, 790-791 (9th Cir.2006) (internal citations and quotations omitted). When the defendant is the moving party and is seeking summary judgment on one or more of a plaintiff's claims, the defendant

> has both the initial burden of production and the ultimate burden of persuasion on [the motion]. In order to carry its burden of production, the [defendant] must either produce evidence negating an essential element of the [plaintiff's] claim . . . or show that the [plaintiff] does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. In order to carry its ultimate burden of persuasion on the motion, the [defendant] must persuade the court that there is no genuine issue of material fact.

Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000) (citations omitted).

**II. UNDISPUTED FACTS**

The following facts are undisputed under Local Rule 260(b). Under California law, a "slate mailer" is a "mass mailing which supports or opposes a total of four or more candidates or ballot measures." Cal. Gov't Code § 82048.3. (Defs.' Resp. to Pls.' Statement of Undisputed Facts ¶ 6, ECF No. ECF No. 29.)

Plaintiffs' "[mailing] is a slate mailer." (Id. ¶ 9; see FAC ex. 2; ECF No. 15.) "Plaintiffs' California Public Safety Voter Guide [hereinafter referred to as "the Guide" or by full name] is a slate mailer organization" within the meaning of California Government Code section 82048.4 because "[i]t is involved in the production of one or more slate mailers, exercises control over the selection of candidates and measures found in the slate mailers, and receives payments totaling five hundred dollars . . . or more in a calendar year to produce slate mailers." (Defs.' Resp. to Pls.' Statement of Undisputed Facts ¶ 8.)

California Government Code section 84305.7(c) prescribes that "[i]f a slate mailer organization sends a slate mailer . . . that identifies itself or its source material as representing a nongovernmental organization" with a public safety-related name, then it "shall disclose on the outside of each piece of mail . . . the total number of members in the organization identified in the slate mailer . . . ." (Id. ¶ 5.) Plaintiffs' mailing lists its publisher with the following phrase in the upper-left corner of the first page of its mailing: "[The Guide] is a Special Project of the Policy Issues Institute." (FAC ex. 2, p. 1.) A silhouette of a firefighter battling a blaze is prominently displayed on the first page below the publication's title. (Id.)

Plaintiffs and their slate mailer organization, The Guide, have no members. (Defs.' Resp. to Pls.' Statement of Undisputed Facts ¶¶ 10, 11.) "Plaintiffs do not wish to publish 'the total number of members' on any piece of slate mail they distribute." (Id. ¶ 15.)

5

### III. DISCUSSION

**A. Application of California Government Code Section 84305.7(c) to Plaintiffs**

Plaintiffs argue in their opposition to Defendants' cross-motion for summary judgment that California Government Code section 84305.7(c) does not apply to the subject mailing. (Pls.' Rep. to Defs.' Opp'n & Opp'n to Defs.' Cross-Mot. Summ. J. ("Pls.' Rep. & Opp'n") 5:8-21, ECF No. 31.) The statute prescribes:

> If a slate mailer organization
>
> sends a slate mailer or other mass mailing
>
> that identifies itself or its source material as representing a nongovernmental organization
>
> with a name that includes the term "peace officer," "reserve officer," "deputy," "deputy sheriff," "sheriff," "police," "highway patrol," "California Highway Patrol," "law enforcement," "firefighter," "fire marshal," "paramedic," "emergency medical technician," "public safety," or any other term that would reasonably be understood to imply that the organization is composed of, or affiliated with, law enforcement, firefighting, emergency medical, or other public safety personnel,
>
> [then] the slate mailer or mass mailing shall disclose on the outside of each piece of mail and on at least one of the inserts included with each piece of mail in no less than 12-point roman type, which shall be in a color or print that contrasts with the background so as to be easily legible, the total number of members in the organization identified in the slate mailer or mass mailing.

Cal. Gov't Code § 84305.7(c) (paragraph breaks inserted for clarity). The statute only applies to "slate mailer organization[s]" that "send[] a slate mailer or other mass mailing." Id. Plaintiffs admit that "California Public Safety

6

Voter Guide," which Plaintiffs' mailer describes as a "Special Project of the Policy Issues Institute," is a "slate mailer organization" and its publication, entitled "California Public Safety Newsletter and Voter Guide," is a slate mailer. (Pls.' Statement Undisputed Facts ¶ 8, 9 ECF No. 25-5; FAC Ex. 2, p. 1) However, Plaintiffs contend this slate mailer "does not identify itself or its source material as representing a nongovernmental organization." (Pls.' Rep. & Opp'n 5:15-18.) Plaintiffs also argue that the phrase "slate mailer organization" is a legal term of art, and thus "an entity that send[s] . . . slate mailers" is not necessarily an "organization as that term is generally understood." (Id. 7:6-8.)

California Government Code section 82048.4 defines "slate mailer organization"; however, the statute does not define "nongovernmental organization" or "organization." See § 82048.4 (defining "slate mailer organization" as "any person who . . . [i]s involved in the production of one or more slate mailers"). Defendants argued during the hearing on the motions that the statute's definition of "slate mailer organization" in section 82048.4 is not the appropriate definition of the word "organization" in section 84305.7(c). Plaintiffs argue that the following definition of "organization" in the Random House Dictionary should be used: "a <u>group of persons</u> organized for some end or work." (Id. 6:16-18 (emphasis added).) Under Plaintiffs' definition of "organization," their slate mailer identifies both "itself" and "its source material as representing a nongovernmental organization." Cal Gov't Code § 84305.7(c).

Plaintiffs' slate mailer "identifies itself . . . as

7

representing a nongovernmental organization" through the use of the word "institute." Id. The publisher of Plaintiffs' slate mailer is identified in the upper-left corner of the first page of the slate mailer document as follows: "California Public Safety Voter Guide is a Special Project of the Policy Issues Institute." (First Amend. Compl. Ex. 2, p. 1.) The word "institute" implies that the publisher identified is—consistent with Plaintiffs' definition of "organization"—"a group of persons organized for some end or work." Webster's Third New International Dictionary defines the word "institute" as "(1): an organization for the promotion of some estimable or learned cause or the welfare of some group" and "(2): an association of persons or organizations that collectively constitute a technical or professional authority in a field or work or study." Webster's Third New International Dictionary 1171 (1986). These definitions of "institute" comport with Plaintiffs' definition of "organization." Under the first definition, an institute cannot promote its public policy cause without constituent individuals. Further, the second definition directly mirrors Plaintiffs' definition of "organization" since an "association of persons" is a synonym for "a group of persons." Therefore, by describing the "California Public Safety Voter Guide" as a "Special Project of the Policy Issues Institute," the slate mailer identifies itself as a nongovernmental organization.

Plaintiffs' slate mailer also identifies "its source material as representing a nongovernmental organization." Cal. Gov't Code § 84305.7(c). The prominent use of the noun "California" in the mailer's title, "California Public Safety

8

Newsletter and Voter Guide," implies the source material is connected to an organization of public safety officials employed in California. Further, considering the words "California Public Safety" in conjunction with the silhouette of a firefighter battling a blaze directly below, it is clear that Plaintiffs have represented their source material as being a "group of persons," specifically public-employee firefighters. (<u>See</u> First Amend. Compl. Ex. 2, p. 1.) Therefore, Plaintiffs' slate mailer, through its title, identifies "its source material as representing a nongovernmental organization."

Since the slate mailer both "identifies itself" and "its source material as representing a nongovernmental organization," the statute applies if the nongovernmental organization is identified "with a name that includes the term . . . 'public safety.'" Cal. Gov't Code § 84305.7(c). The term "public safety" is included both in the name of the publisher, "California Public Safety Voter Guide," and the document title, "California Public Safety Newsletter and Voter Guide," either of which is the name of the organization the mailing purports to represent. (<u>See</u> First Amend. Compl. Ex. 2, p. 1.) Therefore, section 84305.7(c) applies to Plaintiffs' slate mailer.

**B. First Amendment Freedom of Speech Challenge**

Plaintiffs argue section 84305.7(c) unconstitutionally infringes their First Amendment right to freedom of speech both facially and as applied to their mailing. "Facial challenges are disfavored" because, inter alia, they "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of

9

the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449 (2008). "A facial challenge to a legislative Act is . . . the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987). Plaintiffs' facial challenge is based only on conclusory arguments that are insufficient to support such a challenge. Nevertheless, "[i]f [Plaintiffs'] as-applied challenge fails, then [Plaintiffs'] facial challenge necessarily fails as well because there is at least one set of circumstances where application of" section 84305.7(c) would not violate First Amendment free speech rights. Williams Jefferson & Co. v. Bd. Of Assessment & Appeals No. 3 ex rel. Orange Cnty., 695 F.3d 960, 963 (9th Cir. 2012).

### 1. Standard of Review

The parties dispute the level of judicial scrutiny applicable to Plaintiffs' First Amendment free speech as-applied challenge. Plaintiffs argue the "strict scrutiny" standard applies, contending this standard requires Defendants to bear "the burden of proving that the [California disclosure requirement] at issue [is] (1) narrowly tailored, to serve (2) a compelling state interest." (Pls.' Mot. Summ. J. ("Pls.' Mot.") 7:14-17, ECF No. 25 (quoting Cal. Pro-Life Council, Inc. v. Randolph, 507 F.3d 1172, 1178 (9th Cir. 2007) (internal quotation marks removed)).) Further, Plaintiffs argue this standard requires the statute to "use the least restrictive means to

1  further the articulated interest." (Id. 7:17-18 (quoting ACLU of
2  Nev. v. Heller, 378 F.3d 979, 993 (9th Cir. 2004).) Defendants
3  counter that the statute is subject to the less demanding
4  "exacting scrutiny" standard, which has been illuminated in
5  recent authority. (Defs.' Cross-Mot. Summ. J. & Opp'n Pls.' Mot.
6  Summ. J. ("Defs.' Cross-Mot. & Opp'n") 7:15-8:21, ECF No. 26.)

7  　　　　Although the strict scrutiny standard is typically
8  applied to content-based speech restrictions, the Supreme Court
9  has recently explained that disclosure and disclaimer
10 requirements are subject to an "exacting scrutiny" standard.
11 Citizens United v. Fed. Elections Comm'n, 558 U.S. 310, 366-67
12 (2010). Therefore, the exacting scrutiny standard is applied to
13 Plaintiffs' as-applied challenge to the statute's disclosure
14 requirement, which Plaintiffs characterize as a disclaimer
15 requirement, to determine "whether the law's requirement[] [is]
16 substantially related to a sufficiently important governmental
17 interest." Human Life of Wa., Inc. v. Brumsickle, 624 F.3d 990,
18 1005 (9th Cir. 2010).

19 　　　　Under the exacting scrutiny standard, the proponent of
20 an electoral disclosure or disclaimer requirement must identify
21 an "important governmental interest" the statute serves. Family
22 PAC v. McKenna, 685 F.3d 800, 806 (9th Cir. 2011). If the
23 proponent identifies an important governmental interest, the
24 court then determines whether the regulation "bear[s] a
25 substantial relationship" to that governmental interest.
26 Brumsickle, 624 F.3d at 1008. "To survive exacting scrutiny, 'the
27 strength of the governmental interest must reflect the
28 seriousness of the actual burden on First Amendment rights.'"

11

McKenna, 685 F.3d at 806 (quoting Davis v. Fed. Elections Comm'n, 554 U.S. 724, 744 (2008)). A court, therefore, weighs the strength of the governmental interest against the actual burden on First Amendment rights. See id. at 806-11. If the governmental interest outweighs the burden on speech, then the regulation survives the free speech challenge.

### 2. California Government Code Section 84305.7(c) Survives Exacting Scrutiny

Defendants argue the statute's disclosure requirement serves, inter alia, California's informational interest in better informing the electorate of who is speaking before an election. (Defs.' Cross-Mot. & Opp'n 9:8-24.) "Informing the public," McKenna, 685 F.3d at 806, more specifically, "providing the voting public with the information with which to assess the various messages vying for their attention in the marketplace for ideas," is an important governmental interest. Brumsickle, 624 F.3d at 1008. By requiring a slate mailer to disclose the number of members in a public safety-related organization it purports to represent, the statute aids the public in understanding what type of entity is speaking and who stands to benefit. "The increased 'transparency' engendered by disclosure laws 'enables the electorate to make informed decisions and give proper weight to different speakers and messages.'" Id. (quoting Citizens United, 558 U.S. at 371) Moreover, "[a]ccess to reliable information becomes even more important as more speakers . . . enter the marketplace, which is precisely what has occurred in recent years." Id. at 1007. Therefore, California's "interest in an informed electorate . . . is of the utmost importance." McKenna,

685 F.3d at 809.

Plaintiffs argue Defendants' asserted governmental interest in an informed electorate cannot justify the burden of compelled speech the statute imposes on their free speech rights by requiring them to disclose that their organization has no members. Plaintiffs explain:

> [The statute] severely handicaps non-membership public safety-related slate mailer organizations by sending their slate mailers out into the marketplace of ideas with the equivalent of a sandwich-board sign saying, "Feel free to ignore me." To force a non-membership slate mailer organization such as that of Plaintiffs to say that it has no members is so stigmatizing and marginalizing that it amounts to a muzzle and invitation to readers and voters to disregard the mailers, regardless of how worthy the messages are.

(Pls.' Rep. & Opp'n 3:15-21.)

The essence of the burden Plaintiffs identify is the disclosure requirement's potential to damage their perceived credibility. A "California Public Safety Newsletter and Voter Guide" displaying an image of a firefighter without any reference to the size of the represented organization could garner greater esteem than the same mailing with a disclosure that the represented organization has zero members, since a reader of Plaintiffs' mailing without this disclosure may be inclined to believe that the "organization" publicizing the mailer represents public-employee firefighters.

But if the disclosure has the potential to undermine the author's credibility, this potential consequence results from the author's representation that its message is endorsed by public-employee firefighters. Thus, the potential damage posed to

13

Plaintiffs' credibility under the circumstances at issue does not constitute a serious and "actual burden" "on [Plaintiffs'] First Amendment rights." McKenna, 685 F.3d at 806. Here, the statute does not, as Plaintiffs argue, require them to "speak ill" of themselves. (Pls.' Rep. & Opp'n 12:19.) Rather, it imposes an obligation on slate mailers that identify themselves as representing public safety-related organizations to disclose a neutral fact—a membership number—and it is up to the electorate to interpret that fact. Further, the statute's disclosure "requirements do not extend indiscriminately to all issue advocacy conducted at any time." Brumsickle, 624 F.3d at 1018. Instead, the statute, by its definition of "slate mailer," only targets election speech and only certain types of election speech. See Cal. Gov't Code § 82048.3 (defining "slate mailer" as a "mass mailing[,] which supports or opposes a total of four or more candidates or ballot measures"). Additionally, the mandated disclosure, which must be written "in no less than 12-point roman type," would not occupy an overly large portion of Plaintiffs' slate mailer. Cal. Gov't Code § 84305.7(c). Therefore, to the extent that the statute burdens Plaintiffs' First Amendment speech rights, this burden is modest.

"[T]he people in our democracy are entrusted with the responsibility for judging and evaluating the relative merits of conflicting arguments. They may consider, in making their judgment, the source and credibility of the advocate." Brumsickle, 624 F.3d at 1008 (quoting First Nat'l Bank of Bos. v. Bellotti, 435 U.S. 765, 791-92 (1978)). The disclosure statute in this case is aimed directly at California's interest in aiding

14

the voting public in understanding "the source and credibility" of "advocate[s]." Id. Weighing the government's strong informational interest against any modest burden on Plaintiffs' speech rights, the statute survives Plaintiffs' as-applied First Amendment free speech challenge.

### C. First Amendment Freedom of Association Challenge

Plaintiffs also cursorily argue that the statute unconstitutionally interferes with their First Amendment right to free association. However, Plaintiffs do not explain how the statute interferes with their ability to associate. Plaintiffs argue that certain organizations desire the number of members they have to remain private; however, revealing the size of an organization does not harm its "privacy of association and belief guaranteed by the First Amendment." Buckley v. Valeo, 424 U.S. 1, 64 (1976). Right of association case law focuses on disclosure of the names of an organization's members or internal campaign documents, and such disclosure is not at issue in this case. See NAACP v. Alabama, 357 U.S. 449, 462 (1958) (holding that compelled disclosure of the names and addresses of all members of a group violated members' right of association); Perry v. Schwarzenegger, 591 F.3d 1126, 1145 (9th Cir. 2009) (granting a petition for a writ of mandamus to prevent disclosure of campaign strategy documents). Therefore, the statute survives Plaintiffs' First Amendment right of association challenge.

### D. Due Process Vagueness Challenge

Plaintiffs also challenge the statute under the Due Process Clause of the Fourteenth Amendment as unconstitutionally vague on its face.

1	"A law is unconstitutionally vague if it fails to
2	provide a reasonable opportunity to know what conduct is
3	prohibited, or is so indefinite as to allow arbitrary and
4	discriminatory enforcement." Brumsickle, 624 F.3d at 1019
5	(quoting Tucson Woman's Clinic v. Eden, 379 F.3d 531, 555 (9th
6	Cir. 2004)). "Nevertheless, perfect clarity is not required even
7	when a law regulates protected speech, and we can never expect
8	mathematical certainty from our language." Id. (internal citation
9	omitted) (internal quotation marks omitted). Moreover,
10	"uncertainty at a statute's margins will not warrant facial
11	invalidation if it is clear what the statute proscribes 'in the
12	vast majority of its intended applications.'" Cal. Teachers Ass'n
13	v. State Bd. of Educ., 271 F.3d 1141, 1151 (9th Cir. 2001)
14	(quoting Hill v. Colorado, 530 U.S. 703, 733 (2000)). "The
15	touchstone of a facial vagueness challenge in the First Amendment
16	context . . . is not whether *some* amount of legitimate speech
17	will be chilled; it is whether a *substantial* amount of legitimate
18	speech will be chilled." Id. at 1152.

19	Plaintiffs specifically argue that the prescribed
20	phrase in the statute stating "or any other term that would
21	reasonably be understood to imply that the organization is
22	composed of, or affiliated with, law enforcement, firefighting,
23	emergency medical, or other public safety personnel," which is
24	contextualized as follows, is unconstitutionally vague. (Pls.'
25	Mot. 13:7-11.)

26	    If a slate mailer organization sends a slate
    mailer or other mass mailing that identifies
27	    itself or its source material as representing
    a nongovernmental organization
28

16

|   |   |
|---|---|
| 1 | with a name that includes the term "peace officer," "reserve officer," "deputy," "deputy sheriff," "sheriff," "police," "highway patrol," "California Highway Patrol," "law enforcement," "firefighter," "fire marshal," "paramedic," "emergency medical technician," "public safety," |
| | <u>or any other term that would *reasonably* be understood to imply that the organization is composed of, or *affiliated* with, law enforcement, firefighting, emergency medical, or *other public safety personnel*</u>, |
| | [then] the slate mailer or mass mailing shall disclose on the outside of each piece of mail and on at least one of the inserts included with each piece of mail in no less than 12-point roman type, which shall be in a color or print that contrasts with the background so as to be easily legible, the total number of members in the organization identified in the slate mailer or mass mailing. |

Cal. Gov't Code § 84305.7(c) (emphasis added) (paragraph breaks inserted for clarity). Plaintiffs argue this provision is unconstitutionally vague because the terms "reasonable[ness]," "affiliation," and "other public safety personnel" are not defined. (Pls.' Mot. 13:11-12.) Plaintiffs argue that the "statute will undoubt[ably] encourage 'arbitrary and discriminatory enforcement' simply due to the lack of clarity of the terms." (<u>Id.</u> 13:17-18.)

However, these "otherwise imprecise terms [] avoid vagueness problems" here where they are "used in combination with terms that provide sufficient clarity." <u>Gammoh v. City of La Habra</u>, 395 F.3d 1114, 1120 (9th Cir. 2005). The terms that precede the provision, including "peace officer," "sheriff," "police," "law enforcement," "firefighter," and "paramedic," and "public safety," all give meaning to the provision's text: "any other term that would reasonably be understood to imply that the

17

organization is composed of, or affiliated with, law enforcement, firefighting, emergency medical, or other public safety personnel." Cal. Gov't Code § 84305.7(c). The statute does not list every term that triggers its application, but from reading the exemplars, it is clear that in order to trigger applicability, a non-listed term should connote the same meaning as one of the many listed terms.

While the terms Plaintiffs attack as vague may be susceptible to some differences in interpretation, "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'" Brumsickle, 624 F.3d at 1021 (quoting Hill v. Colo., 530 U.S. 703, 733 (2000)). Plaintiffs do not provide any evidence of actual confusion over this provision or even submit example terms that would illustrate the provision's vagueness. Because it is "clear what the [statute] as a whole prohibits," the provision survives the vagueness challenge. Grayned v. City of Rockford, 408 U.S. 104, 110 (1972).

Plaintiffs also raise vagueness concerns about the statute's requirement that covered slate mailer organizations disclose "the total number of members in the organization identified." Cal. Gov't Code § 84305.7(c). Plaintiffs argue it is unclear if an organization with zero members must specifically use the number "0" or an explanation that a group "has no members" would suffice. (Pls.' Rep. & Opp'n 19:3-5.) Although "it is solely within the province of state courts to authoritatively construe state legislation," employing the plain meaning

"traditional tool[] of statutory construction" it is evident that the issue of whether Plaintiffs could satisfy the requirement in the statute by responding with an explanation rather than a number does not present a concrete vagueness constitutional challenge that should be resolved by a federal court. Cal. Teachers Ass'n, 271 F.3d at 1146-47. Plaintiffs also question the clarity of the term "members," arguing "[t]he term could refer to those who are able to vote as a member of an organization, or instead to those who have merely expressed an interest in an organization." (Pls.' Rep. & Opp'n 19:12-14.) However, Plaintiffs admit that their group has zero members; thus, Plaintiffs' argument regarding the meaning of the term members is exactly the type of "hypothetical situation[] not before the Court [that] will not support a facial attack." Brumsickle, 624 F.3d at 1021. Further, Plaintiffs provide no evidence that any confusion surrounding the definition of "member" would chill a "*substantial* amount of legitimate speech." Cal. Teachers Ass'n, 271 F.3d at 1151. Therefore, the statute survives Plaintiffs' Fourteenth Amendment vagueness challenge.

   **E. Equal Protection Challenge**

Finally, Plaintiffs seek summary judgment on their claim that the statute violates their rights under the Equal Protection Clause of the Fourteenth Amendment. (Pls.' Mot. 14:1-3.) Plaintiffs, however, later abandoned their equal protection claim "by not raising [it] in opposition to the [State's] [cross-] motion for summary judgment" or addressing it at oral argument. Jenkins v. Cnty. of Riverside, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005). Further, even had Plaintiffs' equal

protection claim not been abandoned, Plaintiffs' claim would fail because Plaintiffs have not made the threshold showing that they are "similarly situated to other entities not affected by the law at issue." Safeway Inc. v. City & Cnty. of S.F., 797 F. Supp. 2d 964, 971 (9th Cir. 2011). Therefore, Plaintiffs' equal protection claim is not reached, as it is deemed waived.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is DENIED, and Defendants' cross-motion for summary judgment is GRANTED.

Dated: December 27, 2013

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge